The STATE of Ohio, Appellee,

v.

HYMES, Appellant.

[Cite as *State v. Hymes* (1996), 115 Ohio App.3d 668.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 93 C.A. 182.

Decided Nov. 20, 1996.

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Michele G. Cerni,* Assistant Prosecuting Attorney, for appellee.

*William S. Creighton,* for appellant.

---

JOSEPH E. O'NEILL, Presiding Judge.

This timely appeal arises out of a bench trial in the Mahoning County Common Pleas Court finding defendant-appellant, Demond Hymes, guilty of murder in violation of R.C. 2903.02 with a firearm specification.

The essential facts are that, on February 28, 1993, appellant and Darnell Dawson, the victim, were engaged in a heated argument over whether Dawson stole a $40 check from Hymes. The two were roommates and, during the argument, another person, Ida "Missy" Oliver, was present as well.

At trial, the state's theory of the case was that appellant was so enraged at the theft that he planned to shoot Dawson. We know this because Missy Oliver testified that, as appellant argued with Dawson, he turned to Oliver, who was present, and said to leave the apartment because he (appellant Hymes) was about to kill Dawson. Appellant then drew a gun from the right side of his pants and pointed it at Dawson. At this time all Oliver saw, before she fled the apartment, was, after appellant drew the gun and announced he would kill Dawson, Dawson got up from off the couch in the living room where all three parties were present and hastily retreated into the back rooms of the apartment. As Dawson ran away, Oliver saw and heard appellant shoot at him. From outside the apartment, Oliver then heard another shot, and shortly after witnessed appellant exit the apartment and drive away. Directly following him, Oliver observed a bleeding and staggering Darnell Dawson come running out of the house.

Police officers pieced together what apparently happened after the first shot Oliver saw and when she next spotted Dawson outside. When Dawson ran out of the room, appellant shot at him and missed. This was the first shot. As he ran, Dawson sought to take refuge in the bathroom, slamming the wood panel door behind him. In pursuing Dawson, appellant stopped outside the bathroom door and leveled a second shot through the door. This shot hit Dawson, and would eventually cause his death. The evidence adduced to support this theory was that a careful sweeping of the apartment by police showed that only two shots were fired. The first bullet lodged in the living room wall and the second went through the bathroom door. This was evidenced by a bullet hole in the door approximately forty-eight inches above the ground. It is also plain that Dawson was shot in the bathroom because of the characteristic blood spatters resulting from such a wound in this room. Further, the wound in Dawson's body was

calculated by the coroner to be 47.3 inches off the ground from the base of the victim's feet. Include the fact that the victim was wearing shoes at the time and the wound matches the hole in the door beyond a reasonable doubt.

To counter this story, appellant argued when he took the stand that Missy Oliver was never in the apartment at the time of the shooting. His spin on the story was that a fistfight broke out between himself and the victim. As the two men wrestled around, appellant observed Dawson apparently trying to reach for a gun, which both knew was in the closed linen closet outside of the bathroom. Seemingly faster than Dawson, appellant was able to reach it first. On seeing this, Dawson retreated into the bathroom, slamming the door behind him. Not knowing what Dawson was up to in the bathroom, appellant claims that he fired a warning shot in the bottom six inches of the bathroom door. None of this story was believed by the court and, in fact, does not mesh readily with the evidence. To begin with, there was no evidence of any fistfight between the parties as neither Hymes nor Dawson exhibited any bruises or contusions. Additionally, it seem impossible that appellant's story that he shot at the bottom of the bathroom door could have happened, as there was only one bullet hole in the bathroom door, and that was forty-eight inches above the ground. The trial court took all of these factors into consideration and, accordingly, found appellant guilty of murder with a firearm specification. This appeal followed.

■ The first assignment of error contends that the trial court erred prejudicially when the trial judge overruled appellant's objection to the introduction of the videotape of the appellant.

That portion of the trial dealing with this videotape and this portion of this appeal dealing with this videotape can be best described as much ado about nothing. During cross-examination, the appellant was asked by the prosecutor if he had ever used guns before. In response to this question, he answered: "Yeah, I have used guns before." The following dialogue then took place:

"Q. Now, you said back in February of 1993, you didn't have a gun?

"A. I didn't.

"Q. You never had a gun during February?

"A. No, I didn't.

"Q. What about January?

"A. No, I didn't.

"Q. Do you remember a party where there was a videotape taken where at that party you came up and you pulled a gun out of your right pocket, and you danced waving that gun around?

"A. No, I don't.

"Q. You don't?"

At that point, the prosecution brought forth a videotape of a party which took place in February of 1993. In this videotape the appellant is observed dancing about and drawing a gun from his pants pocket. What relevance or impact this had upon the final outcome of the case is hard to understand. This all came about after the appellant had testified on direct examination and cross-examination that he had held a weapon and the weapon had fired twice during an altercation with the decedent. The prosecution contends that this videotape was used not as rebuttal evidence but simply to test the credibility of the appellant as a witness. It should be remembered that a trial judge has broad discretion in permitting or excluding evidence and the duty of this court is neither to substitute its discretion for that of the trial judge nor reverse on an error of judgment. While still holding to the original description of this assignment of error in this part of the trial, we find no error on the part of the trial judge in overruling the defendant's objections to the admission of the videotape.

This first assignment of error is found to be without merit.

The second assignment of error complains that the trial judge erred and abused his discretion when he allowed Cardnell Dawson to testify as a rebuttal witness.

After the defense had rested, the prosecution informed the judge that it was their desire to call Cardnell Dawson as a rebuttal witness. Counsel for the appellant objected to this and advanced as a basis for the objection the fact that, prior to the start of trial, the trial judge had granted a separation of witnesses. Counsel pointed out to the judge that Dawson had sat throughout the course of the trial rather than being separated. Counsel also contended that Dawson did not appear on the witness discovery list. The judge overruled the objections and the prosecution was permitted to call Dawson as a rebuttal witness.

"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

Further, the exclusion of testimony for an asserted discovery violation is discretionary. The Supreme Court of Ohio has established a tripartite test for determining whether a trial court has abused its discretion in admitting other evidence that was not properly disclosed under Crim.R. 16.

"In the event the state withholds the name and address of a witness, Crim.R. 16(E)(3) provides for the admissibility of the testimony of the witness if it can be shown that the failure to provide discovery was not willful, foreknowledge of the

statement would not have been benefited the defendant in the preparation of the defense, and the defendant was not prejudiced by the admission of the evidence." *State v. Heinish* (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026, syllabus.

As a part of his defense, the appellant had testified that, during January and February 1993, he had not possessed a gun. Dawson, the father of the victim, testified that, in January, the appellant was in his house and he observed a pistol stuck in appellant's beltband. He further testified that a few weeks later he observed his son and the appellant in an automobile and, when he approached the automobile, observed a pistol on or about the appellant. This testimony would not have benefited the appellant even if he had had foreknowledge of the testimony. There was no evidence that the prosecution failed to provide this discovery willfully and there is no basis to conclude that the appellant was prejudiced by the admission of this evidence.

This second assignment of error is found to be without merit.

■ The third assignment of error contends that the evidence produced at trial was insufficient for any rational trier of fact to conclude beyond a reasonable doubt that appellant acted purposely.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * " *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Before announcing his verdict, the trial judge exhaustively reviewed the evidence that led him to his conclusion. There can be no contest of his findings of fact.

"THE COURT: The issue that I have to decide is whether I'm convinced beyond a reasonable doubt that Demond Hymes purposely caused the death of Darnell Dawson. Of course, I am. Of course, he did. What has not been discussed very much in this trial is that there was blood speckled on the fixtures in the bathroom. How else could that have possibly occurred if Darnell Dawson was shot in the hallway? Also, it is too much of a coincidence that the hole in the bathroom door is about 48 inches from the floor and the bullet wound in Darnell Dawson is 47.3 inches from the ground level. Of course, he was shot through the bathroom door.

"The credibility of Ida 'Missy' Oliver is good. It is natural that there were some details that are not clear, but she testified that she saw the defendant come

out of the house with the gun in his right hand. Defendant testified that he didn't, that he must have dropped the gun as he was leaving the apartment. I don't believe him. Tammy Rhodes testified that Missy had the screen door open and that Missy didn't go into the apartment. It is natural for witnesses to not know such details in such situations of terror, of extreme fright, of chaos. Tammy was sure that Missy went up to the apartment, either called for Tammy or waved her in or both. Missy said that—that she was in the apartment, and I believe her. The defendant said that Missy was not in the apartment, and I do not believe him. His credibility was destroyed by his own testimony. Tammy also testified that the defendant had the gun in his right hand when he exited the apartment. So did Missy.

"From the evidence, I believe that this defendant threatened to kill Darnell Dawson and that he did so, that he told Missy to go out, 'I'm going to kill him,' that he shot at Darnell Dawson and missed and shot again when Darnell ran into the bathroom and that it was this second shot that killed Darnell Dawson. This is a purposeful killing, and the defendant is found guilty of the crime of Murder as charged in the indictment and of the specification that he had a firearm while committing the offense of Murder.

"That being the case, final disposition sentencing hearing is set therefor for tomorrow morning, Friday, September 3rd, 1993, at 8:30 A.M.

"Is there anything further from the State?"

There was sufficient evidence to support the verdict rendered by the trial judge. Accordingly, this third assignment of error is found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO and COX, JJ., concur.