THE STATE OF OHIO, APPELLEE, *v.* HEINISH, APPELLANT.

[Cite as State *v.* Heinish (1990), 50 Ohio St. 3d 231.]

(No. 88-1817—Submitted November 7, 1989—Decided April 25, 1990.)

*John T. Corrigan,* prosecuting attorney, and *Carmen M. Marino,* for appellee.

*J. William Petro* and *Thomas S. Hudson,* for appellant.

WRIGHT, J.

## I

Appellant asserts in his first two propositions of law that the trial court erred in allowing the coroner to testify to the fact that the victim's body was burned when it could not be determined that the burning of the body caused the victim's death. Appellant also claims that the court's denial of a voir dire of the coroner prior to the coroner's testimony deprived appellant of a fair trial.

Appellant argues that since the condition of the body of the victim precluded the coroner from finding a single purposeful manner of death, any testimony that the body was burned would prejudice the jury against the defendant because of the cruel nature of a death caused by a burning. This argument is unpersuasive. The coroner testified that death could have resulted from any of three possible causes: a blunt impact to the head, strangulation, or the flames from the flash fire that burned the victim's body. In regard to the burning, the coroner also testified that the burning could have occurred either before or after death.

Evid. R. 401 states:

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of conse-

quence to the determination of the action more probable or less probable than it would be without the evidence."

Thus, the testimony concerning the burning of the body was relevant since the body was burned by an accelerant that was either K-1 kerosene, diesel fuel No. 1, or heating oil No. 1. As well, the defendant had K-1 kerosene in his home and the evidence showed that he was using it to heat the house in North Ridgeville. The victim was burned primarily about the face, which would tend to show an attempt to conceal her identity and is an act that could have been done by a person who could be linked to the victim.

Even if, as appellant argues, there is no concrete evidence that the burning caused the death of the victim, the fact of burning is pertinent because of the coroner's inability to determine the precise cause of death due to the victim's burns. We would emphasize that if the coroner had not been allowed to testify as to the burning of the body, he would not have been able to explain why he could not determine an exact cause of death.

In support of appellant's argument regarding the court's refusal to grant his motion to voir dire the coroner, appellant mistakenly relies on *Hammond v. Moon* (1982), 8 Ohio App. 3d 66, 70, 8 OBR 97, 102, 455 N.E. 2d 1301, 1306. *Hammond* merely stands for the proposition that a court may determine the admissibility of evidence on a motion *in limine*. There is no requirement that a court must determine for all time the admissibility of evidence by employing such a procedure. In this case, prior to the testimony of the cor-

oner, the prosecutor outlined the anticipated testimony and the court ruled it admissible. In any case, as noted above, we cannot find that the court abused its discretion in holding this evidence relevant and admissible. Accordingly, these propositions of law are not well-taken.

## II

In his third proposition of law, appellant argues that he was denied due process of law and a fair trial when the coroner testified that one of the possible causes of the victim's death was a flash fire, although experts later testified that the fuel that burned the body was kerosene, which does not have a tendency to flash.[1]

A coroner is an expert witness who is permitted to give an opinion on matters within his scope of expertise. *State v. Cousin* (1982), 5 Ohio App. 3d 32, 5 OBR 34, 449 N.E. 2d 32, paragraph two of the syllabus. (Evid. R. 703.) Here, the coroner testified that death could have resulted from one of three possible causes: the blunt impact to the head, strangulation, or the flames from the flash fire that burned the body. In so doing, the coroner made it clear the flash fire theory was at best a mere possibility.[2]

We can find no denial of due process where the coroner testified that death by way of a flash fire was only a possibility. The other two alternatives were more likely to have been the cause of death.

## III

In his fourth proposition of law appellant alleges that the coroner was permitted to testify as to the cause of

---

[1] Experts from the defense and from the state later testified that kerosene does not ignite in the form of a flash.

[2] The coroner specifically stated, "I can't say that *is* what happened, it *might have* happened." (Emphasis added.)

death even though he did not state the cause to a reasonable scientific certainty. This court stated in *State* v. *Manago* (1974), 38 Ohio St. 2d 223, 227, 67 O.O. 2d 291, 293, 313 N.E. 2d 10, 13, that testimony of a coroner that details the *possible* causes of a death is sufficient evidence to sustain a homicide conviction. Here the coroner was able to testify that the victim died due to "homicidal violence," giving three alternative causes. Under the facts before us we hold that a coroner's testimony as to the cause of death is not required to be of a reasonable scientific certainty. This proposition is not well-taken.

## IV

Appellant's fifth proposition of law states that he was denied due process of law because of the admission of gruesome and inflammatory photographs whose prejudicial impact substantially outweighed their probative value. The admissibility of gruesome photographs has been discussed by this court in *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, paragraph seven of the syllabus, certiorari denied (1985), 472 U.S. 1012, and *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 258, 513 N.E. 2d 267, 273-274, certiorari denied (1988), 484 U.S. 1047.

The fifteen photographs taken by the coroner's office and the seven taken by the police which were admitted into evidence were illustrative of the testimony of state witnesses and expert forensic evidence concerning the elements of the offense charged. They were not repetitious. Our review of the record reveals no abuse of discretion on the part of the trial court on this issue as the admission was in conformity with *Maurer* and *Morales*, *supra*. This proposition of law is not well-taken.

## V

In his sixth proposition of law, appellant states that he was denied due process of law as to confrontation of witnesses in violation of Crim. R. 16. Here the trial court permitted the testimony of a witness whose name was known to the state, yet whose name was not provided to defense counsel until the day before she testified.

The state did not supply defense counsel with the name of Jennifer Yesenko, a witness who testified that the defendant's car was not at the North Ridgeville location past 9:35 p.m. on the day when the victim was discovered missing. Yesenko's testimony was significant because the defendant had previously stated to the police that he did not leave the house before 10:00 p.m. Yesenko's testimony provided evidence that defendant may well have left the house earlier than he stated and thus could have had time to dispose of the body.

The prosecutor stated that he did not know the address of Yesenko, nor did he learn the significance of her testimony, until the day before she testified, when he gave her name to defense counsel. Defense counsel objected and asked for a continuance for the purposes of interviewing the witness and performing time and distance tests. The court denied the continuance; however, the prosecutor stated that he had no objection to defense counsel performing the time and distance tests over the weekend and calling the witness later for cross-examination. The prosecutor and defense counsel interviewed the witness for the first time the same morning before her testimony. Defense counsel never performed the time and distance tests.

Crim. R. 16(E)(3) allows the court a variety of alternatives where a

failure to provide discovery is found. The court can either order the party to permit the discovery or inspection, grant a continuance, prohibit the party from using the evidence, or make such order as it deems just under the circumstances. We have previously held that upon the state's failure to provide discovery in compliance with Crim. R. 16(E)(3), the testimony of the undisclosed witness can be admitted if it can be shown that the failure to provide discovery was not willful, foreknowledge of the statement would not have benefited the defendant in the preparation of the defense, and the defendant was not prejudiced by the admission of the evidence. See *State* v. *Parson* (1983), 6 Ohio St. 3d 442, 445-446, 6 OBR 485, 488, 453 N.E. 2d 689, 692.

There is no question that the state had a duty to disclose the name of this witness. However, there is no evidence that foreknowledge of this testimony would have benefited appellant or that he was prejudiced by the admission of this testimony. Further, defense counsel had an opportunity to take the time and distance measurements, and interview and cross-examine the witness. Thus, any error by the trial court in denying appellant's motion for a continuance was harmless beyond a reasonable doubt. This proposition of law is not well-taken.

## VI

In his seventh proposition of law, appellant argues that he was denied his right of cross-examination of a police officer concerning the results of the kerosene-typing tests. The police officer had not actually conducted the tests to determine if the residual accelerant taken from the victim was the same as the kerosene found in defendant's closet. For the police officer then to testify concerning the results of the kerosene-typing tests would have constituted hearsay. Thus, it was proper for the trial court to sustain the prosecutor's objection to such testimony. Evid. R. 802. Also, later in the cross-examination, defense counsel was still able to elicit the testimony he sought, even though the testimony was hearsay. Thus, this proposition of law is not well-taken.

## VII

In his eighth proposition of law appellant argues that he was denied a fair trial by the prosecutor's repeatedly asking the same question after defense counsel's objection to the question was sustained. On cross-examination of a police officer, defense counsel implied that a Robert Bryner, the victim's former stepfather, could have killed the victim. On redirect examination the prosecutor asked the witness if he knew the blood type of Bryner. Bryner's blood type had been checked and he had been eliminated as a suspect by the police. The court sustained defense counsel's objection to the question. However, immediately thereafter the prosecutor made several other attempts to elicit testimony as to the blood type of Bryner. Defense counsel's objections to these attempts were sustained. Appellant argues that this conduct denied him a fair trial. We find this argument unpersuasive and reject this proposition of law.

## VIII

In his ninth proposition of law, appellant argues that the trial court erred in allowing the prosecutor to introduce evidence to impeach appellant's credibility when appellant did not put his character in issue. Appellant argues that the prosecutor was permitted to ask appellant's wife if appellant had ever lied to her about important matters, thereby putting his

character into issue.[3] This question was permitted after appellant's wife testified for the defense on direct examination concerning the circumstances in which appellant last saw the victim.

Appellant cites *State* v. *Mann* (1985), 19 Ohio St. 3d 34, 19 OBR 28, 482 N.E. 2d 592, for the proposition that the state may not impeach the credibility of a defendant who does not testify in his own defense. This case is not on point since it concerned the introduction of a defendant's violation of a civil injunction into evidence in a criminal trial. In *Mann,* we merely prohibited such evidence from being introduced to prove that the defendant committed the crime with which he was charged because he was a man of criminal tendencies. Appellant also mistakenly relies on *State* v. *DeMarco* (1987), 31 Ohio St. 3d 191, 194, 31 OBR 390, 393, 509 N.E. 2d 1256, 1259, which is an "other acts" case, in which we held that evidence of delinquent loans was not relevant to the proof of guilt of the defendant.

An out-of-court declaration of a defendant, offered by the defendant to prove the truth of the matter asserted, is hearsay. Evid. R. 806, however, permits the impeachment of the declarant's out-of-court statement by use of "any evidence which would be admissible for those purposes if declarant had testified as a witness." The question then is, if the defendant had testified, could the prosecutor have been permitted to ask defendant if he had ever misled his wife "* * * about some very material and important matters since he has been married * * * to * * * [her]?" See Evid. R. 608(B). Since Evid. R. 608 permits the

---

[3] Appellant avers that he was careful not to put his character into issue at any time during his wife's testimony.

same impeachment as if the declarant were testifying, then the prosecutor's inquiry into appellant's past misstatements to his wife constitutes admissible evidence. See *United States Life Ins. Co.* v. *Wright* (1878), 33 Ohio St. 533. See, also, *State* v. *Kline* (1983), 11 Ohio App. 3d 208, 11 OBR 330, 464 N.E. 2d 159. We reject this proposition of law.

## IX

In his tenth proposition of law appellant states that he was denied a fair trial because the record was devoid of evidence of a purposeful killing. This argument falls short for several reasons. It first fails because the coroner testified that the victim died because of "homicidal violence." Furthermore, due to the burned condition of the body, the coroner could not point to any specific cause of death, so he postulated that the death could have resulted from one of the three possibilities, as discussed in Parts I and II above. The jury made a finding of fact that a purposeful homicide had been committed and the record supports such a finding beyond a reasonable doubt.

While the state's case relies on circumstantial evidence, the jury had before it, among other matters, the following hard facts. The victim was with the defendant from 4:00 p.m. until about 10:30 p.m., according to the defendant himself. There was no evidence in the record to indicate that defendant was not the last one to see her alive. There was no evidence that the victim was with the defendant at the house in North Ridgeville, contrary to what he told police. No one saw her at the house and there was no evidence that she was around plaster dust. The defendant's statement that he dropped the victim off at her boyfriend's apartment is suspect because the victim had

a curfew of 11:00 p.m. Defendant stated that he dropped her off at her boyfriend's at about 10:30 p.m. and did not mention this to his wife until she asked him of the whereabouts of the victim. Upon being told, the victim's mother immediately called the boyfriend's apartment and was told by the boyfriend's younger brother that the victim had never appeared. The defendant made inconsistent statements regarding the circumstances in which he dropped the victim off at her boyfriend's home. He told his wife that he parked in front of the apartment and watched the victim walk up to the door of the building. He told Sgt. Hutchinson that he pulled into a small shopping mall next to the apartment complex and saw her go into the courtyard of the apartment. Further, the defendant's wife stated that the defendant told her that he saw the victim reach out her hand for the door. The clothes that defendant claimed he used at the house were voluntarily given to the police; they did not have a trace of plaster dust on them. The type of kerosene that was possibly used to burn the victim was of the same type that defendant had in his home. There was testimony from Jennifer Yesenko that the defendant left the North Ridgeville house before 9:35 p.m., although defendant stated that he left at 10:00 p.m. When defendant was taken to the restroom where the victim's body was found, he stared at the exact location without being told where the body had been found.

This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 212, 9 O.O. 3d 152, 154, 378 N.E. 2d 1049, 1051; *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 118, 8 O.O. 3d 113, 116, 374 N.E. 2d 1370, 1373. In order to rely on circumstantial evidence to sustain a conviction, that evidence must be irreconcilable with an accused's innocence. Our review of the record supports such a finding of a purposeful homicide and we find the evidence presented at trial sufficient to sustain a conviction of the lesser-included offense of murder under R.C. 2903.02.

## X

Appellant in his eleventh proposition of law argues that the record contains insufficient evidence to support his conviction for attempted rape. We agree.

We find the evidence in this record insufficient to support a conviction of aggravated murder for the reason that the conviction in the instant case was predicated upon the state proving the aggravating circumstances of attempted rape and kidnapping beyond a reasonable doubt. The court below reversed the kidnapping conviction,[4] and for the reasons set forth below we must also reverse the attempted rape conviction.

"Attempt" is defined in R.C. 2923.02(A) as follows:

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

The state argues its charge of attempted rape is premised on the following facts. A saliva stain was found on the outside of the victim's blue jeans. This stain could have come from appellant, although thirty-two percent of the Caucasian population

_____
[4] No cross-appeal was filed on this issue.

has the trait of which the stain is composed. The victim's body was found with her jeans partially unzipped and partially down from her waist. Her blouse was partially up from her waist. She was wearing no underwear or shoes.

The attempted rape conviction was, of course, based wholly upon circumstantial evidence. We held in *State v. Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 910, that conduct must be "strongly corroborative of the actor's criminal purpose" in order "to constitute a substantial step" toward the act. We went on to state that "* * * this standard does properly direct attention to overt acts of the defendant which *convincingly demonstrate* a firm purpose to commit a crime * * *." (Emphasis added.) *Id.* at 132, 2 O.O. 3d at 292, 357 N.E. 2d at 1063.

In the instant case, the evidence promoted as indicative of an attempted rape cannot be separated from evidence that is merely residual to the underlying crime of murder. There is no evidence by itself sufficient to reach the threshold of a separate crime of attempted rape as opposed to gross sexual imposition. Evidence of finding the victim's body in the condition noted above does not allow the fact-finder to conclude beyond a reasonable doubt that an attempted rape has occurred.

One may be tempted to speculate and indeed strongly suspect that crimes other than a murder were committed. Yet, we would be remiss in performing our duties of review if we let the attempted rape conviction stand. We simply cannot fill in the blanks in a death penalty prosecution where the state has failed to meet its burden of proving all the elements thereof beyond a reasonable doubt.

Accordingly, albeit reluctantly, we find that the evidence the state asserts as indicative of attempted rape does not "convincingly demonstrate a firm purpose to commit a crime." *Id.* Thus, we reverse the conviction for attempted rape, the evidence being insufficient as a matter of law to sustain the conviction.

## XI

In his twelfth proposition of law, appellant states that he was denied due process through the trial court's exclusion of evidence that involved three areas. The first involved hospital records of the victim that pertained to an assault on the victim by two girls five months before the victim's death. The second involved court records pertaining to these two girls being found delinquent for assaulting the victim. The third involved records of the conviction of Robert Bryner, the victim's former stepfather, for domestic violence. Bryner had allegedly threatened the victim's mother, Lily Heinish, that he was going to take her daughter, the victim, away from her. Bryner also had been supposedly seen parked outside the victim's home two weeks before the victim's murder.

Evid. R. 104 allows a trial judge discretion in determining the admissibility of evidence. The record is not entirely clear why the trial judge excluded this evidence. However, it is reasonable to conclude that it was excluded due to its lack of relevance with respect to the guilt or innocence of the accused. As stated, Evid. R. 401 defines "relevant evidence" as "* * * [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The fact that these matters fail to

place other parties at the crime scene or fail to demonstrate how other parties had the opportunity to commit the crime illustrates that they fail to meet the foundational requirements necessary for their admissibility at trial. We certainly find no abuse of discretion here.

We hold the trial court properly excluded hospital records of the girls' assault on the victim and juvenile court records showing that the girls had been found delinquent. These records constituted hearsay evidence and were properly excluded under Evid. R. 802, which bars the admission of hearsay evidence unless it falls within a specific exception as delineated by the Ohio Rules of Evidence or by the Constitutions of the state of Ohio and of the United States. Evid. R. 802.[5]

### XII

In his thirteenth proposition of law, appellant states that he was denied a fair trial when he was not allowed to voir dire the excluded witnesses mentioned in proposition twelve (see Part XI, *supra*). As previously stated, a defendant has no legal right to voir dire a witness. While defendant was not allowed to voir dire these witnesses, he was allowed to proffer to the court for review on appeal the substance of what the evidence would have shown, had the defendant been allowed to present it at trial. Defendant was also allowed the opportunity to call these witnesses to the stand but made the tactical decision not to do so.

Appellant cites *Woods* v. *Columbus* (1985), 23 Ohio App. 3d 163, 165, 23 OBR 406, 408, 492 N.E. 2d 466, 468-469, to support his proposition that the trial court erred by not allowing preservation of a record for appeal of potentially excludable evidence by using a sworn question-and-answer period sometime during trial. Such a position ignores the result in *Woods, supra,* where the court did in fact consider evidence that was proffered.

This court approved of the proffer

---

[5] It should also be noted that defendant's right to due process was carefully observed when defense counsel was given the opportunity to call to the stand persons either involved in these incidents or who could testify about them. Defense counsel chose not to do so as to each of these incidents. In addition, defense counsel had earlier cross-examined the police officer involved in investigating these situations and was able to elicit the facts of the assault from that officer. The prosecutor as well brought these facts out on redirect examination.

The trial court properly excluded evidence purporting to show that Robert Bryner had threatened the victim and her mother. Cleveland police officers had investigated Bryner's possible connection with the victim's death, but could show none. Also, only three people, the victim's mother, the victim's boyfriend, and the defendant, knew where the victim would be on the evening of the victim's death. Since police investigators ruled out the possibility of Bryner having killed the victim, introduction of evidence to show the possibility of Bryner as a suspect would have only served to confuse or mislead the jury.

The trial court thus properly excluded this evidence not only because it was irrelevant, but because even if relevant, it would have served to confuse the issues, mislead the jury, and cause undue delay. Evid. R. 401, 403(A) and 403(B). As the court of appeals correctly observed:

"Had the court permitted such evidence the prosecution would have been forced to rebut by establishing the innocence of the other persons causing the collateral controversies to engulf the defendant's trial. * * *" (Citing *State* v. *Thomas* [Oct. 3, 1985], Cuyahoga App. No. 49586, unreported; *State* v. *Shields* [1984], 15 Ohio App. 3d 112, 114, 15 OBR 202, 204, 472 N.E. 2d 1110, 1113.)

method allowed by this trial court to preserve a defendant's record for appeal[6] in *State* v. *Grubb* (1986), 28 Ohio St. 3d 199, 28 OBR 285, 503 N.E. 2d 142, paragraph two of the syllabus. We now reaffirm that viewpoint and refuse to hold that a trial court must go further when allowing a defendant to preserve his objections for appeal. Therefore appellant's thirteenth proposition is not well-taken.

### XIII

Appellant in his fourteenth proposition of law states that he was denied due process of law when the prosecutor argued facts not in evidence, specifically the blood types of persons who the defense implied were possible suspects.

Prosecutorial argument premised upon evidence not admitted at trial is clearly improper, but will not result in a reversal if it can be shown that the accused was not thereby prevented from having a fair trial. *Chapman* v. *California* (1967), 386 U.S. 18, 23-24. Appellant objected to the state's comments on the blood types of these persons. The court immediately instructed the jurors to use their own recollections as to the evidence. Where a jury is cautioned and a correction is given to the jury, the effect of improper evidence may be cured. See *State* v. *Auerbach* (1923), 108 Ohio St. 96, 140 N.E. 507, paragraph two of the syllabus.

While we find that the comments by the prosecutor were improper, the comments did not embrace an element which the state was required to prove for a conviction. These comments were

directed toward other former or possible suspects. The trial court's curative instruction properly directed the jury to consider the facts which were properly admitted. This proposition is not well-taken.

### XIV

We find the evidence presented at trial sufficient to sustain a conviction for the lesser-included offense of murder. The judgment of the court of appeals upholding the convictions of attempted rape and of aggravated murder with the specification of attempted rape is reversed and the sentence of death is vacated. Accordingly, we remand this cause to the trial court for resentencing for the crime of murder consistent with the finding in this opinion.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

RESNICK, J., concurs in part and dissents in part.

DOUGLAS, J., dissents.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur in the syllabus and in the majority opinion. I, however, dissent from the reversal of the verdict of guilty as to attempted rape and the death penalty conviction.

The majority contends that appellant's conviction of attempted rape was "based wholly upon circumstantial

---

[6] As stated, appellant asks this court to mandate that a sworn question-and-answer period sometime during trial be the only method that may be utilized to preserve a record of testimony for appeal. Appellant was allowed to outline to the trial court the

evidence that he would have presented, had such evidence been ruled admissible. Thus, the method appellant utilized to preserve his record was certainly sufficient to satisfy procedural due-process requirements.

evidence." This is not entirely consistent with the record. Dale L. Laux of the Ohio Bureau of Criminal Identification and Investigation testified that he did testing upon the clothing of the deceased. He testified that when examining the jeans of the decedent he observed "a white crystalline stain, very obvious to me when I pulled it right out of the bucket." Laux testified that he found the stain tested positive for amylase, which is contained in saliva. He additionally tested the stain for blood grouping and found that it was type "A"; appellant is also type "A." It must be conceded that thirty-two percent of Caucasians would be type "A" secretors. However, neither the decedent nor her boyfriend, Thomas Grimm, was a type "A" secretor. Rather, they both were type "O." Thus, we have a saliva stain in the crotch area of decedent's jeans which through blood-grouping tests matched the appellant's saliva. In addition, the body of decedent was found in a partially disrobed condition with her shirt pulled up toward her breasts and her jeans unzipped and partially pulled down. She was wearing neither panties nor shoes.

From the foregoing, there were sufficient facts for a jury to find that appellant had taken a " "* * * substantial step in a course of conduct planned to culminate in his commission of the crime. * * *" " *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 152, 512 N.E. 2d 962, 968, quoting *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus. I agree with the court of appeals, which stated, "[c]ertainly this evidence suggests an attempt at sexual conduct, *i.e.,* cunnilingus. The fact [that] the victim was severely bruised about the head and strangled before she died supplies sufficient evidence of compulsion into the sexual conduct by force. * * *" In other words, attempted rape could be inferred from evidence that a saliva stain was found on the victim's jeans in the crotch area, which stain was linked to the appellant by blood grouping, and that the victim's clothes were in disarray in that she had no panties on, her shirt was raised up toward her breasts, her jeans were lowered and unzipped, she was wearing no shoes, and, lastly, other parts of her clothing and jewelry were missing. The jury could reasonably conclude from the disarray of the clothing and the bruises about the victim's head, including those caused by strangulation, that she had been forcibly undressed and that attempted sexual conduct had taken place. The foregoing conduct is strongly corroborative of the appellant's criminal purpose and therefore constitutes a substantial step in attempting to commit rape. *Jester, supra.*

There was sufficient evidence to submit this issue to the jury and from which the jury could conclude beyond a reasonable doubt that the appellant had in fact attempted to rape the victim. Based upon the foregoing, I would not substitute my judgment for that of the trier of fact, and as a result I would affirm the court of appeals and reinstate the verdict and the sentence of death.