OPINION
Appellant, Joseph L. Coleman, Jr., appeals his conviction and sentence on three counts of trafficking cocaine, a violation of R.C. 2925.03, in the Lake County Court of Common Pleas.
On January 15, 1997, Christopher Tewksbury ("Tewksbury"), a confidential informant for the Lake County Narcotics Agency, was ordered to page appellant so that he could buy crack cocaine. The procedure required Tewksbury to call the pager number and enter in the amount of cocaine he intended to purchase. On the first occasion Tewksbury ordered $100 worth of cocaine. Narcotics officers then provided Tewksbury with $100 to use for the purchase. Ten minutes after placing the order, appellant arrived at Tewksbury's residence. During the purchase from appellant, Dennis Sweet ("Agent Sweet"), a Lake County Narcotics Agent, was located at Tewksbury's residence in a chair facing the front door of the home. After appellant arrived, he and Tewksbury entered a bedroom where he then sold $100 worth of cocaine.
Approximately one hour later, Tewksbury was instructed to order $200 worth of cocaine from appellant in the same manner as previously performed. Appellant arrived after being paged and sold $200 of cocaine in the bedroom. As before, Agent Sweet remained seated in the chair outside the bedroom while the transaction occurred.
The next day, January 16, 1997, Tewksbury was again requested to order cocaine from appellant. Shortly after placing a $300 order, appellant arrived at Tewksbury's residence and went into the kitchen/dining room area to perform the transaction. After the exchange, Tewksbury told appellant that Agent Sweet had money and wanted to purchase drugs. Tewksbury then entered the living room, where Agent Sweet was seated on the couch, and let him look at the crack cocaine he had just purchased. Agent Sweet looked at the crack cocaine, said it appeared fine, and appellant then left the premises.
The record reveals that Tewksbury was paid $40 for each transaction and wore an audio monitoring device at all three exchanges. Additionally, a surveillance team recorded the exchanges from a location outside the premises. Finally, Tewksbury was searched prior to and after each exchange with appellant, and the areas where the transactions occurred also were searched before and after each purchase.
On October 1, 1997, appellant was indicted by the Lake County Grand Jury on three counts of trafficking cocaine, in violation of R.C. 2925.03, each consisting of a felony of the fourth degree. Appellant entered a plea of not guilty and a jury trial commenced on January 26, 1998.
At the trial in this matter, both Agent Sweet and Tewksbury identified appellant as the person who sold the substance purchased at each of the three exchanges. In addition, appellee presented expert testimony that lab tests conducted on the substances purchased in each transaction indicated that they were crack cocaine. Finally, the audio recordings made by the surveillance team were played to the jury.
On January 27, 1998, the jury returned a verdict of guilty on each count. In a judgment entry dated March 2, 1998, the trial court sentenced appellant to serve a definite term of imprisonment of ten months on each count, to be served concurrently, with twenty days credit for time already served. The court also suspended appellant's driver's license for six months and advised him that the "bad time" and "post-release control" provisions of R.C. 2967.11 and R.C. 2967.28 may be imposed.
Appellant filed a timely appeal and now asserts the following assignments of error:
 "[1.] The prosecuting attorney engaged in misconduct that denied the defendant-appellant his right to a fair trial as guaranteed by the fifth and fourteenth amendments to the United States Constitution.
 "[2.] The prosecuting attorney failed to provide an accurate response to a defense request for essential discovery.
 "[3.] The verdict of guilty was against the manifest weight of the evidence.
 "[4.] By sentencing the appellant pursuant to sections 2967.11 and 2967.28 of the Ohio Revised Code, as amended by Senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."
 In the first assignment of error, appellant contends that the prosecutor assigned to the case made statements during closing arguments which were inappropriate, denigrated the defense counsel, and denied appellant his right to a fair trial. The first statement at issue occurred when appellee addressed the jury and stated, "Now [defense counsel], his job in representing the defendant [appellant] is to raise this reasonable doubt whether it's real or perceived." The prosecutor further stated, "[W]hat I try to do is keep people on that I think have common sense and that could see through all the [non-issues]." Finally, the prosecutor remarked, "the job of the defense is to make these little wholly [sic] hills into mountains." Appellant objected to each of the three statements.
The issue appellant raises in this assignment of error is that of prosecutorial misconduct in the closing arguments. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith
(1984), 14 Ohio St.3d 13, 14. Indeed, "it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found [the] defendant guilty." Id. at 15, citingUnited States v. Hastings (1983), 76 L.Ed.2d 96, 107. In applying the test for prosecutorial misconduct, it must be recognized that the prosecution is entitled to some latitude in making its closing statement. State v. Maurer (1984), 15 Ohio St.3d 239. In State v. Zimmerman (1985), 18 Ohio St.3d 43,45, the supreme court construed the holding in Smith to mean that if the reviewing court concludes, based on the entire record, that the prosecutor's improper comments were harmless beyond any reasonable doubt, then the conviction must be affirmed. To determine whether a prosecutor's comments were harmless, theZimmerman court stated that a court must ask, "[a]bsent the prosecutor's [improper statements] * * *, is it clear, beyond any reasonable doubt, that the jury would have returned a verdict of guilty?" Id.
Assuming arguendo that the prosecutor's comments in this case were improper, we conclude that they did not prejudicially affect the substantial rights of appellant because it is clear, beyond any reasonable doubt, that the jury would have returned a verdict of guilty. We reach this conclusion in light of the overwhelming evidence presented by appellee that appellant sold crack cocaine.
The facts show that appellant was identified in all three drug purchases at Tewksbury's residence by Tewksbury, a confidential informant, and Agent Sweet. Also, the substance provided by appellant at all three transactions was identified as crack cocaine. In addition, the jury listened to audio recordings of each transaction, as recorded by an undercover surveillance team. Furthermore, the facts show that Tewksbury was searched by police before and after each transaction, as were the rooms in which each purchase occurred. Based on these facts, it is clear beyond any reasonable doubt that the jury would have returned a verdict of guilty, even without appellee's statements. Thus, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant argues that appellee failed to provide an accurate response to a request for discovery when it informed him that its confidential informant had a prior conviction for aggravated robbery, although his conviction actually was for a petty theft offense. Appellant claims that such misinformation prejudiced him by causing his counsel to select a misguided trial strategy.
In the case of State v. Parson (1983), 6 Ohio St.3d 442, the appellant filed a discovery demand requesting certain information, including the production of any written summaries of statements made by him or his co-defendant. The appellee's response stated that neither appellant nor his co-defendant had made any written or oral statements. At trial, the appellant presented the testimony of two alibi witnesses, who testified that he was ill on the day of the incident and that his co-defendant had visited him at home intermittently throughout the day. The appellee then presented the testimony of a police officer to rebut the appellant's two alibi witnesses. Over an objection, the trial court permitted the police officer to testify that the appellant's co-defendant had told him that he [the co-defendant] could not have been present at the robbery scene because he had been helping someone move at the time.
In the appeal of Parsons to the Ohio Supreme Court, the appellant averred that the testimony presented by the appellee's witness violated the discovery rules and was highly prejudicial to his case. In rejecting appellant's assignment of error, the supreme court held that although there was a discovery violation, the conviction must be upheld because: (1) there was nothing in the record to indicate that the state's failure to disclose was a willful violation of Crim.R. 16, (2) the appellant failed to demonstrate how foreknowledge of the undisclosed information would have benefited him in the preparation of his defense, and (3) there was no showing that the appellant was prejudiced. Id. at 445; see, also, State v. Heinish (1990), 50 Ohio St.3d 231, 236.
Crim.R. 16(B)(1) sets forth the following rules concerning appellee's duty to disclose evidence:
 "(e) Witness names and addresses; record. Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. * * *" (Emphasis sic.)
 In the instant matter, the record shows that appellee provided its discovery responses concerning Tewksbury's previous criminal conviction based on information provided by the Geauga County Clerk of Courts. The clerk of courts indicated that Tewksbury had been convicted of aggravated robbery. That information was provided to appellee, who then simply conveyed it to appellant during the course of discovery. Also, appellee was not given any information which would have made the clerk's report suspect. Accordingly, appellee did not willfully fail to provide an accurate and complete discovery answer. Thus, appellant did not satisfy the first element of the Smith test.
Furthermore, appellant has not demonstrated how he would have benefited in preparing his defense had the information concerning Tewksbury's conviction been revealed prior to trial. Appellant merely argues that had he been supplied with the correct conviction records, his attorney would have changed the trial strategy and he would not have lost credibility. Yet, appellant wholly fails to articulate how his trial strategy would change or how any change would benefit him.
Appellant, however, does contend that the undisclosed information resulted in him losing credibility before the jury, because the trial judge verbally reprimanded his attorney for asking Tewksbury questions, on re-cross, about whether he had been convicted of aggravated robbery. Yet, the transcript clearly shows that the reprimand concerned the manner in which his attorney was asking questions; it did not concern the subject matter of them. Moreover, the trial judge's comments were made at the bench and outside the hearing of the jury. Thus, we conclude that there is no viable basis for appellant to believe that the reprimand resulted in a loss of his credibility. Therefore, the second element of the Smith test was not fulfilled by appellant.
Finally, appellant has fallen short in demonstrating that he suffered prejudice. Indeed, appellant had ample opportunity to cross-examine appellee's witness and, hence, discover that Tewksbury had not been convicted of aggravated robbery. In fact, Tewksbury admitted on redirect that he had been charged with aggravated robbery, but pleaded guilty to petty theft pursuant to a plea agreement. Appellee's counsel was given broad leeway in questioning Tewksbury on re-cross about the plea and the circumstances surrounding the commission of the offense. Thus, even if appellee had committed a Crim.R. 16 discovery violation, appellant was not prejudiced since his counsel was permitted to extensively question Tewksbury about the theft offense on re-cross. Therefore, the third element of the Smith test was not met, and appellant's second assignment of error is meritless.
Appellant declares in his third assignment of error that the verdict of guilty was against the manifest weight of the evidence due to the fact that the evidence was not so convincing that a person could conclude beyond a reasonable doubt that he was involved in selling crack cocaine to Tewksbury. Appellant supports his assertion by stating that the only evidence used to identify him as the seller came from Tewksbury, an acknowledged crack user who obtained a fraudulent driver's license, and Agent Sweet, who was unable to observe the entire drug transaction because they occurred out of his view. Appellant also claims that the police made no effort to identify the vehicle that the drug dealer was driving.
The standard used for evaluating a manifest weight argument in a criminal matter was set forth in State v. Martin (1983),20 Ohio App.3d 172, 175, which states:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." See, also, State v. Schlee
(Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11.
R.C. 2925.03 is the statutory provision under which appellant was convicted. That provision states, "(A) No person shall knowingly sell or offer to sell a controlled substance."
In this matter, the jury was presented with evidence consisting of: (1) testimony by Agent Sweet and Tewksbury that appellant was the individual who arrived at Tewksbury's residence after being summoned solely for the purpose of selling crack cocaine; (2) audio recordings of each narcotics transaction, obtained by an undercover surveillance team; and (3) expert testimony that the substances sold at each of the three exchanges tested positive as being crack cocaine. In light of the overwhelming evidence produced at trial, we conclude that the jury did not lose its way in convicting appellant for trafficking drugs, in violation of R.C. 2925.03. Thus, appellant's third assignment of error is not well-founded.
In his final assignment of error, appellant presents argumentation that the trial court relied on unconstitutional legislation and instituted an unlawful sentence by sentencing him pursuant to R.C. 2967.11 and 2967.28, as amended by Senate Bill 269.
A review of the sentencing entry reveals that the trial court included language to the effect that "bad time may be imposed by the Parole Board under Revised Code section 2967.11 for certain rule violations committed [by appellant] while in prison," and, "post release control is optional in this case * * * for violating conditions of post release control imposed by the Parole Board under R.C. 2967.28." It is also evident that appellant has not currently been exposed to punishment under either of the two code provisions of which he complains.
This court has consistently held that a prisoner who challenges the constitutionality of R.C. 2967.11 or 2967.28, but who has not yet suffered any actual imposition of additional time in prison or post release control under those provisions, has no standing to advance such challenge. See, generally, State v. Blair (Nov. 6, 1998), Lake App. No. 97-L-307, unreported; State v. Penhollow
(Oct. 23, 1998), Lake App. No. 97-L-212, unreported; State v.Spikes (Sept. 4, 1998), Lake App. No. 97-L-158, unreported. Therefore, since appellant has not yet suffered punishment under either of these sections, he lacks standing to challenge their constitutionality at the present time.[1] Thus, appellant's fourth assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken and the judgment of the Lake County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD
O'NEILL, J., concurs in judgment only, MAHONEY, J., (EDWARD), Ret., Ninth Appellate District, sitting by assignment, concurs.
[1] This court also recently held that the bad time provision in R.C. 2967.11 was unconstitutional in a habeas corpus proceeding. See, generally, White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported. Subsequent to the appeal of White, the Ohio Supreme Court issued a stay.