Pfeifer, J.,
concurring in part and dissenting in part.
{¶ 169} Ohio continues to employ the death penalty as part of our criminal-justice punishment scheme, and Anthony Kirkland’s predatory, brutal, and heinous crimes clearly qualify him for that ultimate penalty. The state had a seemingly airtight case against Kirkland, but overzealousness in both the guilt and punishment phases has tainted its efforts; this court will taint the law if we bless the state’s actions. In regard to the penalty phase, I concur in Justice Lanzinger’s opinion that Kirkland should be resentenced due to the prejudicial effects of prosecutorial misconduct. In regard to the guilt phase, I write separately to dissent from the majority’s holding sustaining Kirkland’s conviction on the attempted rape of Casonya C.
I
{¶ 170} I dissent from the majority’s holding regarding the “other acts” evidence introduced at trial through the testimony of Kylah W. Kylah testified that when she was 13 years old, Kirkland had exposed himself to her and solicited sex from her. In my judgment, Evid.R. 404(B) should have precluded the admission of that testimony; also, its admission was unfairly prejudicial pursuant to Evid.R. 403.
*100 {¶ 171} The state’s theory is that Kirkland’s September 26, 2007 offer to pay Kylah for a sex act is evidence that is admissible to prove that Kirkland attempted to rape Casonya over a year earlier, in May 2006. There is no doubt that the testimony regarding Kirkland’s exposing himself to Kylah and offering to pay her for a sex act are revelatory. The acts show him to be an evil person who sexualizes underage girls and is willing to pay for sex. That is, the evidence demonstrates his character. The state admitted as much in its closing argument when it told the jury that the kind of a man who would pay a girlfriend’s child for sex acts is the kind of man who would rape Casonya:
First count, again, is a charge of attempted rape; that when he approached Casonya [C.] on that bridge, when he walked with her and when he offered her money, it was an act, it was an attempt to have sexual contact with her.
And, again, this is where the other acts testimony comes in. * * * This is a young girl [Kylah W.] that actually was the daughter of one of his girlfriends, but he sees her as he sees all women, as a sex object.
And what does he do, offers this little 13-year-old girl, whose mother actually is nice enough to let him live there from time to time, five dollars for, his words, to be the first to eat her out.
* * *
But he wants you to believe that when confronted by a stranger, a 14-year-old girl walking across the bridge, he offered her 20 dollars and it got up to 60 dollars to talk.
Well, I’m sure if this little girl was offered 60 dollars just to talk, she would have taken it, but something he said or did made her take that money, throw it back in this predator’s face and knee him. Did she do that because he said let’s talk, or did he say I want to have sex with you—
^ Hi Hi
You look at his pattern. You look at what he does when he sees a woman. You see what’s in his eyes. He sees sex. And he’s going to get it. He’ll barter for it, he’ll pay for it, but he’s gonna get it.
We don’t know if he was successful or not [in raping Casonya C.]. He did a pretty good job destroying it.
As demonstrated by the state’s use of the evidence in closing argument, Kylah’s testimony was not relevant to prove any consequential fact. Its only probative value was to show that Kirkland is a very bad person who would pay for sex with an underage girl, and therefore he must have raped Casonya.
*101 {¶ 172} Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused’s propensity or inclination to commit crime, that is, to show that he acted in conformity with his bad character. State v. Curry, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). Evid.R. 404(B) codifies the common law with respect to evidence of other acts of wrongdoing and is construed against admissibility. State v. Lowe, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). The standard for determining the admissibility of such evidence is strict. State v. Broom, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), paragraph one of the syllabus.
{¶ 173} Evid.R. 404(B) establishes when other-acts evidence is admissible:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident.
The majority rules that Kylah’s testimony is admissible under Evid.R. 404(B) because Kirkland’s act — soliciting Kylah — demonstrated that “he had a sexual intent and motive” for offering Casonya, money. Majority opinion at ¶ 69. But Kirkland faces the death penalty for the death of Casonya not because he offered her money for a sex act but because he allegedly attempted to rape her before killing her. Intent to solicit sex is not the same thing as intent to compel sex. And murder committed in anger because a sexual advance has been refused is not the same crime as murder in the course of rape. The state needed to show, pursuant to Evid.R. 404(B), that the act of soliciting Kylah established a motive for the attempted rape of Casonya or that the act of soliciting Kylah established that Kirkland’s intent was to rape Casonya. On the pivotal question of whether Kirkland attempted to rape Casonya, Kylah’s testimony sheds no light. When Kylah rejected Kirkland’s proposition, he did not rape her. He walked away. Thus, Kirkland’s bad act shows no intent or motive regarding the crime at issue, and the testimony is not admissible under Evid.R. 404(B).
{¶ 174} Further, I would find Kylah’s testimony inadmissible under Evid.R. 403 because its probative value is substantially outweighed by the danger of unfair prejudice. Because of the complete lack of corresponding operative facts between the behavior toward Kylah and the murder of Casonya, Kylah’s testimony was of limited probative value. Kylah was the daughter of a friend of Kirkland, and he would sometimes stay with the family. Kirkland exposed himself to Kylah while she was in her bedroom, but then left the room. He returned with a note offering to pay her for a sex act and then left the room *102 again. Finally, after again entering the room — while dressed — he put a five-dollar bill on her dresser and then left. Kirkland did not react violently when Kylah refused his offer.
{¶ 175} In contrast, Casonya was a stranger. The encounter between Kirkland and Casonya occurred randomly, in public, and at night. There is no evidence that Kirkland solicited Casonya for sex or that Kirkland exposed himself to her. Finally, after offering money to Casonya, Kirkland responded with violence when she threw the money back at him. The question in this case is whether there was a rape at all. Kirkland’s criminal but nonviolent activity with Kylah is being offered to show that a rape occurred. That is, a situation where no rape occurred is being used as evidence that a rape occurred. The evidence is thus of limited probative value.
{¶ 176} Kylah’s testimony was undoubtedly prejudicial, even to a defendant as demonstrably repugnant as Kirkland. The majority mentions a newspaper article that it dared not quote because it is not in the record. The defense claims that it demonstrates prejudice. I will save the reader the trip to the Internet: Hamilton County Prosecutor Joe Deters told the Cincinnati Enquirer that Kylah’s testimony was pivotal in Kirkland’s conviction for the capital murder of Casonya:
Deters wonders if the jury would have recommended the death sentence in the case involving Casonya without the girl’s testimony.
“I think it would have been a coin flip,” Deters said. “There is no question she made the difference in Casonya’s case.”
Perry, Deters: Teen’s testimony could seal killer Anthony Kirkland’s fate, The Cincinnati Enquirer (March 31, 2010). Certainly, Prosecutor Deters was attempting to publicly recognize a young girl for her courage and may have overstated her importance in the case, but there can be no doubt that Kylah’s testimony was highly prejudicial against Kirkland.
{¶ 177} Without question, evidence that a grown man sexually solicited and exposed himself to a girl he knew to be 13 years old is prejudicial. The testimony was unfairly prejudicial because the state, by its own admission, used the testimony to convince the jury that Kirkland must have tried to rape Casonya. The state rested its entire opposition to Kirkland’s Civ.R. 29 motion on Kylah’s testimony: “Specifically in regard to the attempted rape on Casonya [C.], this last witness [Kylah] has shown there was a common scheme or plan.”
*103 {¶ 178} Because the other-acts testimony reflected on Kirkland’s character, did not meet the requirements of Evid.R. 404(B), and was unfairly prejudicial under Evid.R. 403, I would find that Kirkland’s first proposition of law has merit.
II
{¶ 179} Kirkland asserts in his ninth proposition of law that there was insufficient evidence to convict him of attempted rape in connection with the murder of Casonya C. At the close of the evidence, the defense made a Crim.R. 29 motion for acquittal on that charge. The trial court denied the motion and allowed all charges to proceed to the jury. I would find that there is insufficient evidence to convict Kirkland of attempted rape.
{¶ 180} When reviewing a record for sufficiency, the court must consider whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 77; State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The court must view the evidence in the light most favorable to the prosecution and defer to the trier of fact on questions of credibility and the weight to assign evidence. State v. Fry, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, at ¶ 146.
{¶ 181} The crime of rape is “engaging] in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.” R.C. 2907.02(A)(2). The crime of attempted rape is complete when an offender purposely engages in conduct that, if successful, would constitute or result in the offense of rape. R.C. 2923.02(A). We have explained a “criminal attempt” as an act “constituting a substantial step in a course of conduct planned to culminate” in an offender’s commission of the crime. State v. Woods, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), at paragraph one of the syllabus. To constitute a “substantial step,” the conduct must be strongly corroborative of the offender’s purpose to commit the crime, thus directing attention to the offender’s overt acts. State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, at ¶ 95.
{¶ 182} The element of force for purposes of proving the attempted rape of Casonya C. is obvious and indisputable. The question, then, is what overt acts were presented as evidence to prove that Kirkland attempted to compel sexual conduct. The police collected no physical evidence of rape from a rape kit, because the fire damage to Casonya’s body, specifically her pelvic area, prevented the forensic pathologist from taking any specimens. And during his police interrogation, Kirkland repeatedly denied having sex with Casonya.
*104 {¶ 183} The majority states that Kirkland’s offer of money to Casonya “to talk” was an offer of sex. But without Kylah’s testimony, the state had no evidence from which to conclude that the offer of money was for sexual services. And even if there were evidence that Kirkland offered Casonya money for sex, that evidence would not be probative of whether he attempted to rape her before he killed her.
{¶ 184} The majority points to physical evidence that it says is consistent with a sexual purpose behind the murder. Casonya was found naked save for a single sock. The state argues that that fact, standing alone, is sufficient to sustain the attempted-rape conviction. However, even in the cases cited by the majority, the naked condition of the body was not the sole evidence of sexual assault. See State v. Scudder, 71 Ohio St.3d 263, 274-275, 643 N.E.2d 524 (1994); State v. Biros, 78 Ohio St.3d 426, 447-448, 678 N.E.2d 891 (1997).
{¶ 185} This court’s holding in State v. Heinish, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990), suggests that the naked condition of the body, standing alone, is insufficient to sustain a conviction for aggravated rape. In Heinish, the murdered victim was found with her jeans partially unzipped and pulled down several inches from her hips. Id. at 232. Her shoes, jacket, and watch were missing, and there was no underwear on the body. There was also a saliva stain on the crotch of her jeans that, according to laboratory tests, was consistent with the defendant’s. Despite this evidence, this court vacated Heinish’s attempted-rape conviction, because “[e]vidence of finding the victim’s body in the condition noted above does not allow the fact-finder to conclude beyond a reasonable doubt that an attempted rape has occurred.” Id. at 239.
{¶ 186} The burning of Casonya’s body, coupled with other-acts evidence concerning Kirkland’s sexual assault of another victim, Esme K., presents a closer call. According to the state, Kirkland’s intent to rape Casonya is evident from the fact that he raped Esme: “The stark similarities between the defendant’s attack on Esme [K.], i.e., the beating, the vaginal burning, the nude body, are particularly relevant.”
{¶ 187} When Kirkland burned the body of Esme K. — a girl we know he did rape — he started the fire in her pubic area. Based on that evidence, the state argues for an inference of rape of Casonya C. because the fire was started in or was concentrated in the vaginal area, which the state characterizes as an obvious attempt to destroy any evidence of rape.
{¶ 188} However, the record does not support the state’s assertion that the fire was started in or concentrated on Casonya’s vaginal area. Obinna Ugwu, M.D., a deputy coroner and forensic pathologist employed by the county, offered no testimony as to the origin point of the fire on Casonya’s body. The only opinion *105 came from Elizabeth Murray, Ph.D., a forensic anthropology consultant. Dr. Murray testified that “[i]t looked like the center of the fire was at the center of the body.” Dr. Murray was not asked to clarify whether, by “the center of the body,” she meant the vaginal area or somewhere on the torso. However, it is clear in context that she meant the latter: she testified that the hands and forearms were most burned because they were likely folded across the body. Also, she noted that the legs were not as severely burned, suggesting again that she believed the fire began higher on the body. In fact, Casonya’s legs were the only part of the body not substantially charred by the fire.
{¶ 189} Burning Casonya’s body may well have been an attempt to destroy evidence of her murder, not to destroy evidence of an attempted rape. Kirkland burned the bodies of all four of his victims, not just Esme and Casonya. Ultimately, all the state was able to prove was that Kirkland destroyed the bodies of his victims, including the bodies of two victims who were not raped. The fact that he burned Casonya’s body is not probative evidence of whether he attempted to rape her first.
{¶ 190} In summary, the state presented insufficient evidence of attempted rape, and I would therefore reverse Kirkland’s conviction on that charge.
Ill
{¶ 191} In conclusion, I believe that the case should be remanded for resentencing without a consideration of the attempted rape of Casonya Crawford as an aggravating circumstance. The protections afforded by state law and our Constitutions are only as meaningful as this court’s willingness to recognize them.