JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Ramona Berry, appeals her conviction in the Cuyahoga County Court of Common Pleas for theft, in violation of R.C. 2913.02. For the reasons stated below, we affirm.
 {¶ 2} The following facts give rise to this appeal. In December 2001, Berry was indicted on one count of theft, a felony of the fifth degree, in violation of R.C. 2913.02. Berry is a former employee of the McDonald's Restaurant located at 11420 Buckeye Road in Cleveland (hereafter "McDonald's"). Berry was accused of stealing an envelope containing cash from the store safe. The case proceeded to a bench trial, at which the state called six witnesses to testify.
 {¶ 3} Elizabeth Black, a shift manager at McDonald's, testified she was working on the evening of July 19, 2001. She stated that she closed out the registers and placed the money from each drawer into six corresponding envelopes. The amount of money in each envelope was entered into the computer, recorded on the respective envelopes, and written on a deposit slip. Black testified that the sixth envelope, which was marked as totaling $1,365, was too thick to fit into the slot of the safe. Therefore, she separated the money and marked a seventh envelope as "envelope six continued" because the two envelopes went together as a single deposit entry. Black counted the money that went into "envelope six continued" and wrote the amount on the envelope, which was about $1,151. Apparently, no adjustment was made to the $1,365 amount that appeared on envelope six, which represented the total amount in envelope six and envelope six continued.
 {¶ 4} Black claimed there were six entries on the deposit slip. For entry number six she wrote $1,365 and wrote under it "six continued" to indicate two envelopes went with that entry. The deposit slip was not entered into evidence. Black also indicated that she was training Gloria McKenzie, who initialed the envelopes. Black stated she was supervising McKenzie the entire time. Black further testified that once the money is dropped into the safe, it cannot be accessed until an employee from Dunbar Security ("Dunbar") brings the key in the morning and gives it to the morning manager to open the safe and remove the envelopes. The morning manager then locks the safe back up and gives the key back to the Dunbar employee, who is also given the deposit to take to the bank.
 {¶ 5} McKenzie testified that she was a manager trainee on July 19, 2001. She stated that she closed the store with Black that evening. She indicated that her initials were on envelope six and that she had counted the money for that envelope. She confirmed that envelope six had too many bills in it to fit into the safe slot, that Black took some money out of the envelope and placed it into another envelope that Black marked "envelope number six continued," and that Black counted the money placed in the new envelope. McKenzie stated that the envelopes were dropped into the slot and she did not take any of the envelopes.
 {¶ 6} "Envelope six continued" was never deposited with the bank. The store owner, Wilson Rogers, stated the bank called his secretary to inform them that there was a shortage of $1,100 and some odd dollars. Rogers indicated that he had experienced shortages in the past, but only ranging from $10 to $150. Rogers held a managers' meeting where he expressed his concern and gave the employees an opportunity to confess; however, nobody confessed. Rogers then asked some of his managers if they would be willing to take a polygraph test, which they agreed to do.
 {¶ 7} Rogers testified that there were three persons who would have had access to the money: Black, McKenzie, and Berry. According to Rogers, after the polygraph test was administered, Berry did not come back to work. Black testified that following Berry's polygraph test, Berry was crying and told Black that a Dunbar employee had taken the money and called Berry to offer some to her.
 {¶ 8} Andrew Brown, a manager at a different McDonald's store and a friend of Berry's, testified he was among the managers at the meeting held by Rogers. He described the procedures of Dunbar in picking up the money. He stated that when Dunbar comes to pick up the money, they give a key to the manager who is doing the drop. The manager opens the slot, pulls out the box with all the envelopes in it, puts the box on the counter, takes the envelopes out on the counter, and puts the box back in the drop slot. The store manager checks off all of the envelopes to make sure everything is there and then seals it in a bag with a deposit ticket that is given to the Dunbar employee to take to the bank. The Dunbar employee checks to make sure the total deposit on the bag matches what is on the deposit slip.
 {¶ 9} Brown indicated that there have been occasions when a manager would place one deposit that is too big into two envelopes. Brown stated that a deposit slip would indicate, for example, "envelope six continued" on the next line or under the sixth entry to reflect that there are two envelopes for that deposit. Brown stated that he saw the deposit slip at issue during the managers' meeting. He claimed that it had six entries as well as a continued number, reflecting seven envelopes. However, on re-cross-examination, Brown stated that there were only six entries and no indication to Dunbar that there was a seventh envelope.
 {¶ 10} Brown testified that Berry had called him sometime after the managers' meeting and asked him the question, "What if Dunbar took the money?" Brown stated he told Berry she should tell somebody.
 {¶ 11} Donald Campbell, the Dunbar employee who picked up the deposit, stated that he knew of Berry "just by me coming to McDonald's, picking up the money." Campbell denied having any relationship with Berry outside of the store. He also stated that if an envelope was taken out of the drop safe and did not get into the bag, this would have to occur in his presence. Campbell testified that he did not notice anyone pocket an envelope when he made the pick-up. Campbell stopped working for Dunbar about a week after the incident because he had previously signed up for a one-week class at asbestos abatement school and then went to work for a company that removes asbestos. Campbell denied taking the envelope of money in question.
 {¶ 12} Keith Lowry, a polygraph examiner for Security 
Polygraph Consultants, testified that he conducted a pretest interview of Berry. During that interview, Berry stated she suspected Black or McKenzie of taking the deposit money. Berry also admitted to taking approximately $50-$60 a month in money from McDonald's during her employment, with the last occasion being on July 30, 2001. Berry denied any involvement in the missing deposit money.
 {¶ 13} Lowry also conducted a post-test interview of Berry. During this interview, Berry admitted to receiving part of the missing money, $500, from the Dunbar employee who picked up the deposit and she stated that he had taken the envelope without her knowledge. Lowry took voluntary statements from Berry regarding her claims.
 {¶ 14} Berry's statements reflected the following. Berry stated that when Dunbar came to pick up the drop, Donald Campbell (referred to as "D.C." in her statements) gave her a telephone number and a hundred dollars, that later an envelope came up missing, and that there were only six envelopes at the time of the drop. She also stated that two weeks before the drop she asked Campbell for $265 to pay the rent, and the day after the money was missing, he gave her $500.
 {¶ 15} Berry further stated that on July 29, 2001, Campbell called Berry, and she told him that she was going to take a polygraph test. Berry claimed that Campbell told her not to take the test and she asked him why. Berry indicated Campbell informed her the $500 he had given her was from McDonald's. Berry further claimed Campbell told her he took the envelope while she was putting the box back into the safe, and that is why there were only six envelopes instead of seven.
 {¶ 16} Berry stated she called Andrew Brown and asked him if she should tell, and Brown told her not to say anything because it would look like she was trying to shift the blame. Berry admitted to taking $50 to $60 per month and that the last time she had taken money was on July 30, only a couple days before the polygraph. Lowry indicated that Berry did not admit in her statement to being a part of the theft or to having knowledge ahead of time of the theft.
 {¶ 17} The trial court found Berry guilty of theft as charged. In reaching this determination, the trial court stated the following: "What I find most persuasive in this case, and in fact, the more I reflect on it, overwhelmingly persuasive, is Ms. Berry's own conduct after this set of events, because as I look at what she ultimately explained to the polygraph operator, regardless of how you interpret her explanation of things, the explanation makes no sense, other than the fact that she was in complicity in this thing because she did not respond in the way that an innocent person would have responded to this. So my conclusion here is the State has proven beyond a reasonable doubt that she's guilty of this offense." The trial court sentenced Berry to four years of community control sanction and ordered Berry to pay restitution in the amount of $1,151.
 {¶ 18} Berry has appealed her conviction, raising one assignment of error for our review that provides as follows:
 {¶ 19} "Appellant's conviction was not supported by sufficient evidence and she was not proven guilty by evidence beyond a reasonable doubt."
 {¶ 20} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Insufficiency of evidence is a rigorous standard and, if successfully challenged, results in the acquittal of an appellant on the charge. State V. Jonas,
Athens App. No. 99CA38, 2001-Ohio-2497.
 {¶ 21} The theft statute under which Berry was convicted, R.C. 2913.02(A)(1), provides the following: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"
 {¶ 22} Berry argues that the state did not prove beyond a reasonable doubt that she took the envelope of money at issue. She claims that upon the evidence presented, Campbell was a more likely suspect and had the opportunity to steal the envelope.
 {¶ 23} Upon our review of the record, we find Berry's conviction was supported by sufficient evidence. Among the evidence supporting the prosecution's theory was the following: (1) seven envelopes of money were placed in the safe by the night manager and the trainee, but only six envelopes were deposited with the bank; (2) Berry was the morning manager who took the envelopes out of the safe to give to the Dunbar employee; (3) Campbell, the Dunbar employee, testified he knew Berry only from making deposit pick-ups and he denied taking the envelope; (4) Berry admitted to taking $50 to $60 per month from McDonald's; (5) Berry asked Brown "what if Dunbar took the money," and she told Black that the Dunbar employee had taken the money and offered some to Berry; (6) Berry told the polygraph examiner she suspected Black or McKenzie took the money, but later admitted to receiving $500 of the missing money from Campbell.
 {¶ 24} Although circumstantial, the evidence in this case was sufficient to support a conviction for theft against Berry. It is well recognized that "`circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" Statev. McKnight, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, quotingState v. Heinish (1990), 50 Ohio St.3d 231, 238. Here, there was sufficient circumstantial evidence to prove beyond a reasonable doubt that Berry took the envelope of money or conspired with Campbell to take the money.
 {¶ 25} Accordingly, viewing the evidence presented in this case in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Berry's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J., concur.