OPINION
{¶ 1} Appellant Timothy West appeals his conviction on six counts of rape of a child under thirteen years old. He argues that the prosecutor used improper evidence at trial, including a surprise witness, and that he was tried for uncharged crimes. He finds fault with his indictment because it encompasses a period of time beyond the victim's thirteenth birthday. He also raises an ineffective assistance of counsel argument, and challenges the sufficiency and weight of the evidence. Finally, Appellant challenges the constitutionality of his sentence pursuant toState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Appellant's assignments of error are without merit, except for theFoster sentencing issue. The conviction is affirmed, but the sentence is vacated and the case remanded for resentencing pursuant toFoster.
 HISTORY OF THE CASE {¶ 2} Appellant was the live-in boyfriend of Dee Dee McGhee for a period of more than two years starting in 2003. Ms. McGhee lived on Pennsylvania Avenue in Steubenville until the summer of 2004, after which she moved to Wellesly Avenue, also in Steubenville. Also residing with Ms. McGhee were her daughter "B.D.", born 7/26/91, her daughter "A.H.", born 11/10/97, and her son "M.H.", who was six years old at the time of trial. Appellant would sometimes take care of the children when Ms. McGhee was not at home, and generally provided them with adult supervision.
 {¶ 3} On January 23, 2005, B.D., who was thirteen years old at the time, wrote a letter to her mother as follows: *Page 2 
 {¶ 4} "Mom, Okay. Listen. I don't like to talk about it so listen. I don't want to be alone with Timmy [Appellant] because he makes me do nasty stuff with him. I can't take it no more. That's why I'm always acting dumb and always asking if you're leaving. It started at the old house. At first it was just a blow job. Then he started making me do it in my butt. Please don't tell him or any — please don't tell him I told or don't take it to court. I don't like to talk about it." (Tr., pp. 125-126.)
 {¶ 5} After Ms. McGhee read the letter, she called the police. Officer Joseph Buchmelter conducted an initial interview of the parties at the Wellesly home. It was discovered that there was a currently valid protection order prohibiting Appellant from entering Ms. McGhee's residence on Wellesly Avenue. Appellant was arrested the same day. The case was then referred to Patrolman Shawn Scott, a detective within the Juvenile Division of the police department.
 {¶ 6} Appellant was indicted in Jefferson County on May 24, 2005, on six counts of rape of B.D., and one count of rape of A.H. The indictment alleged that the rapes occurred between January 1, 2004, and December 31, 2004. The charges were filed pursuant to R.C. 2907.02(A)(1)(b), referring to the rape of a child under thirteen years of age regardless whether the offender knows the age of the child. The charges were all first degree felonies.
 {¶ 7} On August 10, 2005, the state filed a motion to amend the indictment to include crimes that were committed between August 1, 2003, and January 23, 2005. A hearing was held on the motion on August 29, 2005. The prosecutor argued that the indictment should include more of B.D.'s seventh grade year of school and should *Page 3 
continue all the way to the date Appellant was arrested so as to try all possible issues within that relevant time period in one trial. Appellant's counsel responded by saying "Well, Your Honor, and he's right." (8/29/05 Tr., p. 4.) Appellant's counsel was concerned that the earlier dates might expose her client to a further criminal specification and a more severe penalty, but the prosecutor agreed not to add any further specifications to the charges. There was no further discussion about the dates in the amended indictment, and the court granted the motion to amend the indictment.
 {¶ 8} On September 19, 2005, Appellant filed a motion to sever the charge involving the victim A.H. from the six other counts in the indictment involving B.D. Appellant argued that there would be irrelevant and prejudicial evidence presented in attempting to prove that Appellant had sexually abused B.D.'s sister, A.H. The court granted severance on September 26, 2005, and count two was rescheduled, to be tried separately. Count two is not at issue in this appeal.
 {¶ 9} A jury trial took place on September 29-30, 2005, dealing only with the counts involving the rape of B.D. B.D. testified that Appellant began sexually abusing her while she was in seventh grade, when she was twelve years old and living in the house on Pennsylvania Avenue. She did not remember the exact day or month of each of the rapes. The first rape occurred after she received poor grades on her report card in the seventh grade. Appellant had previously beaten B.D. with a belt, and had threatened to give her a "whippin" for the bad grades unless she performed oral sex. (Tr., p. 130.) B.D. was in her bedroom at the time. She was told to get on *Page 4 
her knees, and Appellant put his penis in her mouth. When she tried to back away because she was choking, he said he was not finished. After he ejaculated, she went to the bathroom and spit in the sink, then brushed her teeth. She did not tell anyone about the rape because she was afraid of what Appellant might do. (Tr., p. 134.)
 {¶ 10} Appellant ordered her to perform oral sex again a few weeks later, and then again shortly afterward. B.D. estimated that Appellant forced her to perform oral sex approximately 20 times.
 {¶ 11} At some point in time after these incidents, Appellant wrote B.D. a note saying he was tired of oral sex, which he referred to as doing an "old," and that he wanted to engage in anal intercourse, which he referred to as doing a "new." He drew a picture for B.D. of two people performing oral and anal sex. The first time he forced her to engage in anal sex was in Ms. McGhee's bedroom. He told her to lie on her stomach on the bed. He placed some type of lubricant on his penis, then inserted it into her anus. B.D. told him it hurt, but he said it was, "either that or the strap." (Tr., p. 140.) B.D. testified that Appellant anally raped her five to ten times.
 {¶ 12} B.D. also testified that Appellant would not usually ask her directly to engage in oral or anal sex. Instead, he would send notes to her, using her younger brother M.H. as a messenger. (Tr., p. 142.) A note would sometimes say, "let's do an old" or "let's do a new". She would sometimes write a return message on the note, such as, "can we please not do this," and she would call for M.H. to return the note to Appellant. *Page 5 
 {¶ 13} After an in camera meeting with the trial judge, M.H. was permitted to testify. He testified that "Big Timmy" used to live in his house and would give him notes to deliver to B.D. (Tr., pp. 21 1ff.) He said that Appellant never asked him to deliver notes to anyone else. He would deliver the note, and wait for B.D. to write a response, then deliver it back to Appellant. He was unable to read the notes himself.
 {¶ 14} During defense counsel's cross-examination of the victim, she testified that her friend M.F. knew about one of the rapes. M.F. testified that she saw one of the notes that Appellant wrote, knew that B.D. had to go upstairs for a few minutes, and saw B.D. come back downstairs. (Tr., p. 188.) The state later called M.F. as a witness, and she corroborated various aspects of B.D.'s testimony.
 {¶ 15} Both parties called expert witnesses to testify. The state called Dr. Stephen Mascio. He testified that he examined B.D. on February 4, 2005. He testified that B.D. had no vaginal tears or lacerations, but that she did have a small anal tear. He testified that in his initial report, submitted as part of the discovery phase of the case, he indicated that there were no anal tears, but that he later viewed some photos taken of B.D. and concluded that the photos showed an anal tear. Dr. Mascio's report, his testimony, and the photos were entered into evidence after objection. (Tr., pp. 219ff.) The day after Dr. Mascio testified, Appellant's counsel requested a mistrial based on the theory that Dr. Mascio's testimony contradicted the report he submitted during discovery. The trial court denied the motion for a mistrial.
 {¶ 16} Appellant called Dr. Lawrence Rosenburg as an expert witness. Dr. Rosenburg noted that there was an anal fissure apparent in the photograph taken by *Page 6 
Dr. Mascio, but he concluded that it was a superficial tear and had occurred, at most, ten to fifteen days earlier and not during the time period during which Appellant was alleged to have raped B.D. (Tr., p. 417.)
 {¶ 17} The state also called Debbie Zirilli, the clerk at Harding Middle School. She testified that once during B.D.'s seventh grade year, on April 27, 2004, she left class during second period and returned during third period. (Tr., p. 269.) No explanation was ever given to the school as to why B.D. left school on that day. She testified that Ms McGhee had filled out an emergency card noting any person permitted to authorize B.D. to leave school. The card for B.D.'s seventh grade year indicated that her "stepfather," living at 1426 Euclid Avenue, was an authorized contact person on the emergency card. Appellant's address at the time was 1426 Euclid Avenue.
 {¶ 18} Appellant introduced at trial a tape of an interview he had with police on March 30, 2005. Appellant also testified at trial.
 {¶ 19} Appellant also called Ms McGhee as a witness. She testified that she and Appellant would argue very often. She testified that their relationship ended the night they got into a fight and he beat her. (Tr., p. 449.) She confirmed that Appellant lived in her house for periods of time during their relationship, and that he was in charge of taking care of the children while he was there. (Tr., pp. 444-445.) He was unemployed for part of the time he was with her. When he was employed, he would sometimes work during the day, and sometimes during the night. *Page 7 
 {¶ 20} The jury found Appellant guilty of all the counts of rape involving the victim B.D. (counts one, three, four, five, six and seven). A joint hearing was held on October 18, 2005, to deal with sentencing and with Appellant's sexual offender classification. The court sentenced him to ten years of incarceration on each count, to be served consecutively. The court also determined that Appellant was a sexual predator. The judgment entry of sentence was filed on October 26, 2005, and this appeal followed on November 23, 2005.
 {¶ 21} Appellant's twelve assignments of error will be reordered to better address the issues raised.
 ASSIGNMENT OF ERROR NO. ONE {¶ 22} "The defendant's due process rights were violated when he was convicted of six counts of rape under R.C. 2907.02(A)(1)(b), where during the final six months of the time frame alleged in the indictment the victim was not `less than thirteen years of age,' as required by the statute."
 {¶ 23} In this assignment of error Appellant initially challenges the form of the indictment. Appellant states that the indictment charges him with crimes committed while the victim was less than thirteen years old, but also sets forth a range of dates for the crimes that goes beyond the child's thirteenth birthday. The indictment alleged that the crimes occurred between August 1, 2003, and September 22, 2005. B.D.'s was born on July 26, 1991; she turned thirteen on July 26, 2004. Therefore, Appellant is correct that, at least theoretically, the indictment also includes a period of time where a charge of raping a child under the age of thirteen might not apply. *Page 8 
Appellant does not only challenge the indictment under this assignment. He contends that the proof at trial and the jury instructions also referred to the time period after the victim's thirteenth birthday. Appellant contends that the proof at trial was so vague and generalized the state could not establish that all the rapes occurred before B.D.'s thirteenth birthday. Here, the record does not support Appellant's contentions.
 {¶ 24} Appellant's primary argument is twofold. First, he raises a technical argument that the indictment is inconsistent because it covers a time period that was both before and after the victim's thirteenth birthday, even though he was charged with raping a child who was under the age of thirteen. Appellant fully acknowledges that the range of dates in the indictment extends almost a year prior to the victim's thirteen birthday, and thus, includes a wide range of dates that would encompass one of the elements of the crime. Appellant simply states that the indictment was invalid because it also included dates beyond the victim's thirteenth birthday. Appellant presents no caselaw to support his contention that an overly broad range of dates in an indictment can nullify a jury verdict. Generally speaking, an indictment does not even need to include the date or range of dates of the alleged crime: "Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a statement that the accused has committed some public offense therein specified. See, also, R.C. 2945.83(A); Crim.R. 7(B). The General Assembly, in declaring what shall be sufficient in an indictment, provided, among other things, that it shall be sufficient if it can be understood that the offense was committed at some *Page 9 
time prior to the time of the filing of the indictment." State v.Sellards (1985), 17 Ohio St.3d 169, 170-171, 478 N.E.2d 781. R.C.2941.08(A) specifically states that an indictment is not invalid because it contains surplus information, which in this case would be a surplus range of dates.
 {¶ 25} We note that objections to defects in the indictment must be made before trial. Crim.R. 12(C)(2). It is clear that Appellant's attorney did not object at trial to the dates in the final amended indictment, and in fact, agreed with the terms of the indictment. A hearing was held on August 29, 2005, on the prosecutor's request to amend the indictment to include crimes committed between August 1, 2003, and January 23, 2005. Appellant's attorney accepted this range of dates, and agreed that it would be better to have the indictment include as wide a range of dates as possible to dispose of as many potential charges as possible in one trial. (8/29/05 Tr., p. 4.) Counsel's only concern at that hearing was whether the earlier date would expose Appellant to a more severe statutory specification that might enhance the penalty, but the prosecutor agreed not to add any further specifications to the charge and not to expose Appellant to more severe penalties. (8/29/05 Tr., p. 5.) There was no discussion about any error in the January 23, 2005, date, even though that date fell beyond the victim's thirteenth birthday. Appellant's counsel not only failed to object to the amended indictment, but also actively encouraged the court to allow the indictment to be amended. It is clear that counsel attempted to gain a benefit for Appellant by preventing the prosecutor from bringing any future charges for crimes *Page 10 
committed within the range of amended dates, even if those dates fell after B.D.'s thirteenth birthday.
 {¶ 26} Under the doctrine of invited error, a party is not entitled to take advantage of an error that he himself invited or induced.Lester v. Leuck (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus; State v. Bey (1999), 85 Ohio St.3d 487,492-493, 709 N.E.2d 484. Furthermore, the rule of invited error prohibits a party who induces error in the trial court from taking advantage of the error on appeal. State v. Woodruff (1983),10 Ohio App.3d 326, 327, 10 OBR 532, 462 N.E.2d 457. The record is clear that the indictment includes a large potential range of dates under which it was possible for Appellant to be convicted of one or more charges of rape of a child under the age of thirteen, and that Appellant's counsel encouraged the trial court to amend the indictment to include a wide range of dates. Therefore, there is no reversible error based on the dates contained in the indictment.
 {¶ 27} Appellant next argues that the evidence presented at trial did not actually establish that any rape occurred while the victim was under the age of thirteen. Appellee, though, cites numerous portions of the record establishing that at least six acts of rape occurred while the victim was less than thirteen. B.D.'s thirteenth birthday was July 26, 2004. She testified that she was twelve when she was in the seventh grade. (Tr., pp. 122, 129.) She testified that Appellant used to beat her with a belt, but he told her he would not beat her for the poor grades on her seventh grade report card if she performed oral sex on him. (Tr., pp. 130-131.) He *Page 11 
forced her to perform oral sex again a few weeks later. (Tr., p. 134.) B.D. testified that she was forced to perform oral sex again a few weeks later, while she was still in the seventh grade. (Tr., p. 135.) B.D. testified that this occurred a fourth, fifth and sixth time, and that she could remember as many as 20 occurrences during the seventh grade. (Tr., pp. 134-135.) These rapes first occurred in B.D.'s bedroom in her family home on Pennsylvania Avenue in Steubenville. B.D.'s family did not move from this house until the summer between her seventh and eighth grade years in school. Obviously, if B.D. was twelve years old in the seventh grade, and all these rapes happened while she was in the seventh grade at the house in which she lived while she was in seventh grade, then they occurred while she was less than thirteen years old.
 {¶ 28} Appellant also anally raped B.D. many times. He told her that oral sex was "getting old" and he wanted something new. (Tr., p. 136.) This also occurred during her seventh grade year, at her family's house on Pennsylvania Avenue, while she was twelve years old. (Tr., pp. 138-141, 266.)
 {¶ 29} Another specific incident occurred while B.D. was at school in the seventh grade. Appellant called the school during the second period of the day. The school released B.D., she went home and had oral sex with Appellant, and then returned to school during third period. (Tr., p. 151.)
 {¶ 30} The argument on appeal is that the evidence is too vague to support six convictions for rape. The record reflects that B.D. gave very specific testimony about many of the times she was raped. B.D. described how the rapes were used as an *Page 12 
alternative to being beaten with a belt. She described Appellant's penis as big, light-skinned and thick. (Tr., p. 132.) She described a particular scar on Appellant's arm, and that he has no tattoos or scars on his body between his chest and his knees. She knew that Appellant had no body piercings. She described how she was forced to get on her knees and move her mouth up and down during oral sex, and that Appellant ejaculated each time. She described that she would brush her teeth each time after oral sex.
 {¶ 31} She described Appellant's method of referring to oral sex as "old" and anal sex as "new," and that he would use these words to request which type of sex he wanted. She described the pain of anal sex, and how she had to kneel at the edge of the bed while Appellant stood behind her. She explained that she would have to go to the toilet after anal sex, and that she would expel feces and blood.
 {¶ 32} She described the notes Appellant would write requesting sex, and that he would give these notes to her five-year old brother M.H. to deliver to her. The existence of these notes was corroborated by her brother and by her girlfriend M.F. M.F. was present when B.D. received one such note, and saw B.D. go upstairs with Appellant and return after 15 minutes. M.F. realized that B.D. was very upset when she came back downstairs, and that B.D. was brushing her teeth. B.D.'s mother was not at home during these incidents. These and many more detailed facts were revealed at trial.
 {¶ 33} Obviously the record does not establish the exact dates of each of these rapes, except for the day that B.D. was taken out of school. As Appellee *Page 13 
correctly points out, however, such specificity of dates is not a necessary part of a rape indictment or an essential element of the crime:
 {¶ 34} "`We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. State v. Humfleet (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15, 1985 WL 7728. * * * An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.' [State v.] Robinette [(Feb. 27, 1987), 5th Dist. No. CA-652], at 7-8. See, also, State v. D.B.S.
[(1985), 216 Mont. 234], 700 P.2d 630, 634 (young children are not `governed by the clock and calendar as adults are' and allowances must be made for the inexactitude of children's memories, or else the defendant becomes virtually immune from prosecution)." State v.Bamecut (1988), 44 Ohio App.3d 149, 151-152, 542 N.E.2d 353.
 {¶ 35} As part of this assignment of error, Appellant also offers somewhat random additional arguments. Appellant objects to the relevance of the testimony of Dr. Mascio. The doctor testified that on February 4, 2005, B.D. had an "anal tear" at the 6 o'clock position. (Tr., p. 221.) He stated that this tear was consistent with anal sex. (Tr., p. 232.) Dr. Mascio did not state any time frame in which he thought anal sex might have occurred to cause the anal tear. Appellant presented his own expert, Dr. Rosenburg, who confirmed that an anal tear at the 6 o'clock position was more *Page 14 
likely produced by sexual penetration than those tears at other positions. (Tr., p. 435.) Dr. Rosenburg, though, did not believe the tear occurred during the period that Appellant was alleged to have raped B.D.
 {¶ 36} Dr. Mascio's original report did not mention an anal tear, but he testified that when he received magnified photos a week or two later, he noticed the tear. (Tr., p. 223.) Thus, his testimony at trial, in contrast to the report he submitted, was that there was an anal tear and that such a tear was consistent with anal sex.
 {¶ 37} The doctor's testimony is certainly relevant to a charge of rape of a child under the age of thirteen, even if it does not present a complete picture of when the rape occurred. That Dr. Rosenburg disagreed with some of Dr. Mascio's analysis was a matter for the jury to evaluate.
 {¶ 38} Appellant also objects to the fact that Dr. Mascio's testimony varied from the written report he submitted during the discovery process. Crim.R. 16(B)(1)(d) requires the prosecutor to make available to the defendant any reports of physical or mental exams or scientific tests. Crim.R. 16(D) also imposes a continuing duty on the prosecutor to continue disclosure prior to and even during trial. State v. Martin
(1985), 19 Ohio St.3d 122, 128, 483 N.E.2d 1157. A failure to update disclosure may result in a denial of due process to the defendant.State v. Wilson (1987), 30 Ohio St.3d 99, 507 N.E.2d 1109.
 {¶ 39} Appellant received Dr. Mascio's report prior to trial, and there was no indication of an anal tear on the report. Dr. Mascio made this discovery when he examined some photos two weeks after the report was submitted. Appellant's *Page 15 
counsel had access to the same photos prior to trial. It is not at all clear when the prosecutor was made aware that Dr. Mascio might testify about an anal tear that was not in his report. There is no evidence that the failure to disclose Dr. Mascio's ultimate testimony was willful. Furthermore, Appellant's counsel was specifically asked if there were any objections to allowing Dr. Mascio's report and the photographs to be entered into evidence, and there were no objections. There were no objections to his testimony about the anal tear. It was only later in trial that counsel requested a mistrial based on Dr. Mascio's testimony.
 {¶ 40} Counsel either waived any objection to the evidence about the anal tear, or is culpable in creating the conditions for which he sought a mistrial by allowing all the testimony and evidence to be presented to the jury before raising any objections. If a timely objection had been made, the trial court could have fashioned an appropriate response, such as granting a continuance or even excluding the evidence from trial. Crim.R. 16(E)(3).
 {¶ 41} It is also difficult to discern any prejudice based on the course of events and other evidence offered at trial. Appellant's counsel had already obtained a defense expert, Dr. Rosenburg, who had access to the photos that Dr. Mascio relied upon for his revised opinion. It is unclear why Appellant's counsel would not have known about the anal tear prior to trial because the defense expert, Dr. Rosenburg, had access to the same discovery materials prior to trial and agreed that there was an anal tear apparent in the photos. Furthermore, Appellant's counsel vigorously cross-examined Dr. Mascio and pointed out the clear contradiction between his *Page 16 
testimony and his report. The fact that Dr. Mascio disputed his own submitted report seems to reflect more on the credibility of the doctor rather than on whether the prosecutor followed the rules of discovery. Appellant counsel's cross-examination made this point very clear. Based on all these factors, there is no reversible error in the trial court's handling of Dr. Mascio's trial testimony and the evidence regarding the anal tear.
 {¶ 42} Appellant also claims that he was convicted of uncharged crimes because there was proof of more than six counts of rape presented at trial. This obviously contradicts Appellant's other arguments where he seeks to establish that no counts of rape were proven at trial. This argument is unpersuasive. It is clear from the record that Appellant could possibly have been charged with many more than six counts of rape, and the evidence presented at trial would have supported more than six convictions. Appellant appears to argue that it was reversible error for the prosecutor to undercharge him. It is within the discretion of the prosecutor to decide what charges to file and pursue in a criminal case, and if the prosecutor determined that six counts of rape could be sustained at trial, that decision is generally not open to judicial review. Bordenkircher v. Hayes (1978), 434 U.S. 357, 364, 98 S.Ct. 663,54 L.Ed.2d 604; State ex rel. Evans v. Columbus Dept. of Law (1998),83 Ohio St.3d 174, 175, 699 N.E.2d 60.
 {¶ 43} That the evidence could also have served to convict Appellant of other or additional crimes is irrelevant and is purely speculative on Appellant's part. The prosecutor was called upon to present as much evidence as was needed to convict *Page 17 
Appellant of the six crimes for which he was charged. The parties also agreed that any rape crimes committed between August 1, 2003, and January 23, 2005, were properly subject to the trial, apparently so that Appellant could not be tried again for any related crimes that may have occurred in that time frame. Appellant's counsel may have gained an advantage by agreeing to include a range of dates in the indictment that went beyond B.D.'s thirteenth birthday. Although he could only be convicted for events that occurred before B.D.'s thirteenth birthday, it is unlikely that he could be retried for similar or related crimes that occurred within the full time span of the indictment. Counsel may also have been anticipating a Crim.R. 11 plea agreement based on the actual unfolding of events at trial. In any event, Appellant's counsel agreed that Appellant would be tried for all rape charges against B.D. that might have occurred within the dates set forth in the indictment, and Appellant cannot now assert reversible error based on the trial court's and the prosecutor's reliance on those dates, so long as the convictions were based on the evidence of criminal events which occurred before the victim turned thirteen.
 {¶ 44} Appellant is most concerned about any evidence of crimes that occurred after B.D.'s thirteenth birthday, since the rape charges were limited to rape of a child under thirteen years old. It is permissible, though, for evidence of uncharged crimes to be introduced at trial to prove, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). One aspect of the prosecution's case was to establish the overall plan involved in Appellant's process of raping B.D., involving code words, written notes, *Page 18 
specific locations where the crimes would occur, and other repetitive aspects of the criminal course of conduct. In order to establish this criminal plan, the prosecution referred to events both before and after B.D.'s thirteenth birthday, even though one of the elements of the charged crime was that Appellant committed the rapes prior to B.D.'s thirteenth birthday. Other "bad acts" evidence may be admitted for the above-mentioned purposes even if the acts occurred after the date of the charged crime. State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046,837 N.E.2d 315, ¶ 85. Although Appellant objected to some attempts by the prosecution to use evidence of prior uncharged crimes, there was never any objection to the prosecution's reliance on subsequent
uncharged criminal acts. Evid.R. 404(B) provides yet another reason why the prosecutor would have been permitted to present evidence of crimes occurring after B.D.'s thirteenth birthday even though the charged crimes involved the rape of a child under age thirteen. In any event, it is readily apparent from the record that there were at least six instances of rape of a child under thirteen proven at trial, supporting in full the conviction, here
 {¶ 45} None of Appellant's arguments in this very broad assignment of error have any merit, and it is overruled.
 ASSIGNMENT OF ERROR NO. THREE {¶ 46} "The trial court erred and violated the defendant's due process rights when it permitted the state to offer the testimony of a witness not identified prior to trial." *Page 19 
 {¶ 47} Appellant contends that witness M.F. was not identified prior to trial and should not have been permitted to testify. M.F. was a friend of the victim and testified that she saw a note Appellant handed to B.D.'s younger brother indicating that B.D. needed to engage in sex with Appellant. Appellant contends that the prosecutor violated the rules of discovery, particularly Crim.R. 16(B)(1)(e), by not disclosing this witness. Appellant's argument is not persuasive.
 {¶ 48} Appellant's argument is based on the syllabus of State v.Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026, which held:
 {¶ 49} "In the event the state withholds the name and address of a witness, Crim.R. 16(E)(3) provides for the admissibility of the testimony of the witness if it can be shown that the failure to provide discovery was not willful, foreknowledge of the statement would not have benefited the defendant in the preparation of the defense, and the defendant was not prejudiced by the admission of the evidence."
 {¶ 50} It is not at all clear that Heinish has any relevance to the situation that occurred in the instant case. The rule inHeinish was premised on the fact that the prosecutor withheld the identity of a witness or other discoverable evidence from the defendant. In this case, the prosecutor did not withhold the identity of M.F. from Appellant; it was Appellant who alerted the prosecutor and the jury that M.F. was a friend of the victim and as to her existence. There is no evidence that the prosecutor had any prior knowledge about M.F. or her potential testimony before the victim mentioned M.F.'s name during defense counsel's cross-examination at trial, and thus, there is no indication that the prosecutor withheld anything during discovery. *Page 20 
 {¶ 51} A trial court is given broad discretion in dealing with discovery issues, including the discovery of last-minute witnesses.State v. Wilson (1993), 91 Ohio App.3d 611, 615, 632 N.E.2d 1384. In this case, the prosecutor was not aware that M.F. was a potential witness until Appellant's counsel revealed the fact at trial. The trial court then permitted Appellant's counsel to privately interview M.F. before she was called as a witness. Appellant's counsel did not request any other relief from the trial court, such as a continuance. (Tr., p. 346.) Given this context, there was no abuse of discretion in allowing M.F. to testify.
 {¶ 52} Even if Appellant is correct and the Heinish rule applies in this case, which is doubtful, the application of the rule does not lead to any reversible error. Appellant concedes that the prosecutor did not intentionally fail to list M.F. as a witness. Appellant has not indicated how he would have benefited by having prior knowledge of M.F.'s exact testimony. Finally, by the time the prosecutor called her as a witness, the jury already had some idea of her relevance to the case by virtue of defense counsel's cross-examination. Thus, even if application of Heinish was appropriate, the trial court did not abuse its discretion in allowing M.F. to testify.
 {¶ 53} Appellant has not demonstrated in what manner the prosecutor's use of information gleaned during cross-examination constituted a discovery violation, and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. FOUR {¶ 54} "The trial court erred and violated the defendant's due process rights when it permitted the state to offer the testimony of an incompetent witness." *Page 21 
 {¶ 55} Appellant contends that M.H. was an incompetent witness because he was only six years old when he testified. Evid.R. 601(A) states:
 {¶ 56} "Every person is competent to be a witness except:
 {¶ 57} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 58} The Ohio Supreme Court set forth the following test to determine when a child under ten is competent to testify:
 {¶ 59} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."State v. Frazier ( 1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus.
 {¶ 60} The competency determination is within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. Id.
 {¶ 61} The only specific part of M.H.'s testimony that Appellant takes issue with is the fact that he could not identify Appellant in the courtroom. It is clear from the record, though, that the purpose of M.H.'s testimony was not to identify Appellant, but rather, to corroborate other testimony about notes that Appellant wrote to B.D. telling her that she must engage in sex acts. These notes were passed to M.H., who *Page 22 
took them to B.D. The fact that he could not clearly identify Appellant in the courtroom is not crucial to his testimony. It is also evident from the record that Appellant's appearance in court was quite different from his prior appearance at Ms. McGhee's home, and this may explain why M.H. could not readily identify Appellant in the courtroom. (Tr., p. 466.) The trial court did not abuse its discretion in allowing M.H. to testify, and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. SIX {¶ 62} "The trial court erred by convicting the defendant when the defendant did not receive effective assistance of counsel."
 {¶ 63} Appellant alleges that his trial counsel was ineffective for eleven different reasons. To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; accord State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In order to show deficient performance, a defendant must prove that his counsel's performance fell below an objective level of reasonable representation.Bradley at 142. To show prejudice, a defendant must show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. at 143. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."Strickland at 686. *Page 23 
 {¶ 64} The Ohio Supreme Court, in State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623, devised a similar test: "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Id. at 396-397. See also, State v. Brooks (1986), 25 Ohio St.3d 144,495 N.E.2d 407.
 {¶ 65} Judicial scrutiny of trial counsel's decisions, acts, and tactics is a highly deferential review. State v. Roberts (2000),139 Ohio App.3d 757, 771, 745 N.E.2d 1057.
 {¶ 66} Appellant first alleges that counsel was ineffective because he did not object to evidence that was outside the range of possible dates for the charged crime. Appellant contends that his counsel allowed evidence to be admitted relating to uncharged acts. As already discussed under assignment of error number one, the indictment included a range of dates that went beyond the victim's thirteenth birthday, and both parties agreed to this in order to dispose of and resolve all possible criminal charges in one trial. Appellant discusses one portion in the trial transcript that supposedly refers to uncharged sexual crimes, but this portion of the record appears to deal with an incident that occurred when the victim was in seventh grade and was still twelve years old. Hence, it would fall into the category of the charged crimes. (Tr., pp. 153-155.) Appellant does not specifically raise any other evidence that *Page 24 
supposedly deals with uncharged crimes, but again, it is clear from the record that the precise dates of Appellant's crimes were in question and that the state needed to reconstruct the entire course of events before and after the victim's thirteenth birthday in order to prove that at least six crimes were committed before she reached thirteen years of age.
 {¶ 67} Appellant argues that his trial counsel failed to renew a Crim.R. 29(A) motion to acquit at the close of evidence, and thus, waived a review of the sufficiency of the evidence. This assertion is incorrect. Although counsel may have waived a review of the trial court's ruling on the original Crim.R. 29(A) motion, counsel did not waive review of the sufficiency of the evidence. The mere fact that Appellant pleaded not guilty to the charges preserves his right to challenge the sufficiency of the evidence on appeal. State v. Jones
(2001), 91 Ohio St.3d 335, 346, 744 N.E.2d 1163; State v. Carter (1992)64 Ohio St.3d 218, 223, 594 N.E.2d 595.
 {¶ 68} Appellant argues that counsel should have objected to the form of the indictment because it did not differentiate between the various rape allegations, and because the time period in the indictment extended beyond the victim's thirteenth birthday. As earlier discussed, the specific date of a crime is generally not one of the essential elements of the crime and is not a necessary part of the indictment. Counsel would not have been ineffective for failing to make a futile objection to the indictment. State v. Girts (1997), 121 Ohio App.3d 539, 560,700 N.E.2d 395.
 {¶ 69} Appellant contends that his counsel should have objected to the jury instructions, which did not address the significance of the victim's thirteenth birthday *Page 25 
with respect to the range of dates stated in the indictment. The judge clearly explained to the jury, however, that it needed to find that the crimes occurred, "within the time period alleged but prior to the 13th birthday of B.D. That 13th birthday would be July 26, 2004." (Tr., p. 516.)
 {¶ 70} Appellant argues that counsel was ineffective for failing to object to State's Exhibit 18 (a school emergency procedure card) and to allowing M.F. to testify. The record reflects vociferous objections to both of these evidentiary matters. (Tr., pp. 274, 331, 343.)
 {¶ 71} Appellant contends that counsel failed to depose or interview the state's expert, Dr. Mascio, and failed to object to his testimony or request a mistrial based on that testimony. The record does indicate that counsel attempted to interview Dr. Mascio but could not. (Tr., p. 253.) Counsel vigorously cross-examined Dr. Mascio about the apparent contradiction between his trial testimony and the report he submitted, particularly about an anal tear that was not discussed in his report but that he noticed later after magnifying some photos he had received. Contrary to Appellant's assertions, counsel did move for a mistrial based on Dr. Mascio's testimony. (Tr., pp. 252ff.) Most importantly, Appellant presents no legal argument as to why any of his complaints might establish ineffective assistance of counsel. As in almost every allegation made in this assignment of error, Appellant makes only vague references to alleged facts (without proper citation to the record), and perfunctorily cites a case (that generally only refers to a vague or general principle of law), and then simply declares that ineffective assistance of counsel occurred. Dr. *Page 26 
Mascio's testimony at trial deviated somewhat from the report he submitted during discovery, and Appellant's counsel quite effectively cross-examined him about his trial testimony. Appellant's contentions in this regard are misplaced.
 {¶ 72} Appellant also contends that trial counsel should have objected to the imposition of maximum, consecutive sentences pursuant toBlakely, but since that issue will always be reviewed on appeal, it is unclear how the failure to raise a Blakely error at trial may have prejudiced Appellant.
 {¶ 73} Appellant asserts that counsel early on mentioned two facts that were supposedly going to be established at trial but were not introduced into evidence. The first was that Ms. McGhee, the victim's mother, called herself "the black widow." The second was that counsel was going to play tapes of some phone calls that were supposedly designed to trap Appellant into making some type of confession.
 {¶ 74} Counsel is afforded wide latitude in its opening statements to discuss what is likely to occur during the trial. State v. Ross (1999),135 Ohio App.3d 262, 271, 733 N.E.2d 659. Counsel did attempt to have Ms. McGhee discuss the "black widow" appellation, but she denied any knowledge of this. (Tr., p. 448.) Although Appellant's counsel called Ms. McGee as its own witness, she turned into something of a hostile witness during direct examination. Thus, her testimony deviated from counsel's expectations. She did discuss at some length her attempt to have Appellant incriminate himself in phone calls, and stated that those phone calls were taped. (Tr., pp. 452ff.) Counsel's decision not to introduce the tapes into evidence appears to have been a revised trial strategy after the prosecutor decided not to ask *Page 27 
Ms. McGee any questions. Counsel was able to induce her to acknowledge that there was nothing incriminating on any of the tapes, and counsel appeared to be satisfied with this tactical victory. It is generally presumed that the tactical decisions involved in calling or refusing to call witnesses, and in choosing the evidence to present at trial, will not support a claim of ineffective assistance of counsel. State v.Coulter (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324; State v.Williams (1991), 74 Ohio App.3d 686, 695, 600 N.E.2d 298. This Court has itself ruled that variations between the opening statement and the actual presentation of evidence at trial do not, in and of themselves, constitute ineffective assistance of counsel. State v. Anderson, 7th Dist. No. 03MA252, 2006-Ohio-4618.
 {¶ 75} Finally, Appellant argues that counsel should have objected at the sexual offender classification hearing. Appellant presents no argument, no specific citation to any part of the record, no caselaw, and no explanation of what counsel might have been expected to say at the hearing.
 {¶ 76} Based on Appellant's failure to actually establish that counsel was ineffective, or certainly that he was prejudiced by the various decisions and actions of his counsel at trial, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. EIGHT {¶ 77} "The defendant's due process rights were violated by prosecutorial misconduct at trial."
 {¶ 78} Appellant contends that the prosecutor committed misconduct in its opening remarks at trial, but does not specify what aspect of his opening remarks *Page 28 
was objectionable. Appellant further contends that the state introduced previously undisclosed evidence, in the form of a school record and by having M.F. testify. Appellant again asserts that the state attempted to prove that he was guilty of uncharged conduct. There is no basis to any of these allegations.
 {¶ 79} Whether a prosecutor's remarks constitute misconduct depends upon (1) whether the remarks were improper and, (2) if so, whether the remarks prejudicially affected an accused's substantial rights.State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883; State v.Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. The touchstone of this analysis, "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,71 L.Ed.2d 78.
 {¶ 80} Both the prosecutor and defense counsel are afforded considerable leeway in presenting their opening and closing remarks.State v. Ross (1999), 135 Ohio App.3d 262, 271, 733 N.E.2d 659. It is not clear what aspect of the prosecutor's opening remarks is being challenged on appeal. As far as the prosecutor's closing argument is concerning, it is true that the prosecutor mentioned events which occurred in B.D.'s eighth grade year, even though the rape charges occurred while she was still thirteen years old and in seventh grade. The prosecutor's references to her eighth grade year involve facts crucial to the case, such as why the crimes were not reported until that year (which was an issue at trial). (Tr., pp. 488ff.) The prosecutor did not discuss any crimes that occurred after B.D. *Page 29 
had turned thirteen, and he made it clear to the jurors that they were only called upon to consider crimes that occurred before B.D. turned thirteen.
 {¶ 81} Concerning the allegedly improper evidence presented by the prosecutor, we have already addressed this in Appellant's previous assignments of error. No error occurred. The prosecutor did not violate any discovery rules by calling M.F. as a witness, because it was defense counsel's questioning of the victim that initially revealed that M.F. had information about the alleged notes passing between Appellant and B.D. The prosecutor also presented proper rebuttal evidence at trial in response to issues that were raised during Appellant's cross-examination of witnesses. The state is permitted to introduce rebuttal evidence in response to issues raised by the defendant during trial. State v.Hewitt (1985), 26 Ohio App.3d 72, 498 N.E.2d 215. None of the incidents mentioned in Appellant's brief actually describe any misconduct by the prosecutor.
 ASSIGNMENT OF ERROR NO. SEVEN {¶ 82} "The defendant's due process rights were violated by plain error present on the record at trial."
 {¶ 83} Appellant lists, in summary fashion, a number of other assignments of error here and simply labels them as plain error. The plain error rule gives the courts the discretionary power to correct a trial error despite the absence of a timely objection. Crim.R. 52(B). In order to constitute plain error, there must actually have been a recognizable error; the error must be an obvious defect in the proceeding; and the error must have affected the substantial rights of the party. State v. Barnes *Page 30 
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. The plain error rule is only applied, "under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 84} Appellant contends that there was error in the form of the indictment, in the admission of evidence, and in the trial court's decision to allow M.F. to testify. We have already held that no error occurred in these matters. Appellant presents no actual argument under this assignment of error. He simply asserts that plain error occurred, and leaves it at that. Without more specific guidance from Appellant as to the nature of the error, there is no basis to conclude that any error, and certainly not plain error, occurred in this case.
 ASSIGNMENT OF ERROR NOS. TWO, NINE AND TEN {¶ 85} "The defendant's due process rights were violated when he was convicted of six counts of rape and the state failed to present sufficient evidence of each and every element for each of those six counts."
 {¶ 86} "The trial court erred by failing to grant the defendant's motion for judgment of acquittal."
 {¶ 87} "The defendant's convictions were against the manifest weight of the evidence at trial."
 {¶ 88} These assignments of error challenge the sufficiency and weight of the evidence. Actually, most of Appellant's first, fourth and sixth assignments of error deal with these same issues, and Appellee sets forth its argument under those *Page 31 
assignments of error in basically the same form. As these arguments have already been addressed, they will not be repeated here. Appellant has conceded that there was some general testimony that he engaged in oral sex with the victim, but he contends that the evidence did not refer to any specific time or date that each rape occurred. Hence, he claims the evidence was not specific enough to support even one conviction for rape. As we earlier stated, the evidence in this case is very specific and is more than sufficient to support the convictions.
 {¶ 89} "A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Scott,101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 31. To determine whether sufficient evidence exists to support a conviction, the reviewing court must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 90} Even though a court of review may find that a verdict is supported by sufficient evidence, it may be found to be against the manifest weight of the evidence. State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, citing State v. Robinson, 162 Ohio St. 486, 487,124 N.E.2d 148. "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on *Page 32 
weighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief" (Emphasis in original.) Id., quoting Black's Law Dictionary (6 Ed.1990) 1594.
 {¶ 91} When reviewing a trial court's decision on the basis that the verdict was against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. Id.
 {¶ 92} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 93} We agree with Appellee that the state proved at least six counts of rape while B.D. was still in seventh grade, meaning that she was under thirteen years old at the time of each rape. B.D. described a series of six separate rapes in the form of oral sex, and also described at least three specific instances of anal sex. A conviction for rape of a child may be upheld primarily on the basis of the victim's testimony, particularly when there is some corroborating evidence. See, e.g.,State *Page 33 v. Hines, 6th Dist. No. L-04-1234, 2006-Ohio-322; State v. Hudson, 5th Dist. No. 02 CAA 12065, 2003-Ohio-7049. We have reviewed the victim's testimony and determined that it supports the six convictions for rape. Corroborating evidence exists in this case. There was testimony about the notes that passed between Appellant and the victim. There was evidence that the victim left her second period class at school for part of the day, supposedly for a doctor's appointment when there was no such appointment, and then returned to school during third period. This time span corresponded with one of the acts of rape described by the victim. There was also character evidence presented, including evidence of Appellant's domestic violence convictions against the victim's mother, and against A.H. The primary evidence, though, was from the victim. As already discussed, her testimony was filled with personal details about Appellant and about many separate instances of rape. The record fully supports the verdict in this case, and these three assignments of error are without merit.
 ASSIGNMENT OF ERROR NO. ELEVEN {¶ 94} "The defendant's due process rights were violated by the cumulative effect of error at trial."
 {¶ 95} Appellant makes a generalized claim that there was cumulative error based on all the previously mentioned assignments of error. Cumulative error may be found when the effect of multiple errors at trial acts to deprive the defendant of a fair trial, even though no single error is found to constitute reversible error. State v.DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the *Page 34 
syllabus. However, "errors cannot become prejudicial by sheer weight of numbers." State v. Hill (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068. The Ohio Supreme Court has said that simply invoking the phrase "cumulative error" is not analysis or argument, and that is precisely what Appellant has done here. State v. Bethel, 110 Ohio St.3d 416,2006-Ohio-4853, ¶ 197. Appellant has not discussed the manner in which he was deprived of a fair trial, and thus, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. TWELVE {¶ 96} "The trial court erred and violated the defendant's right to due process by finding him to be a sexual predator."
 {¶ 97} Appellant argues that the trial court should not have found him to be a sexual predator. A sexual predator is a person that has been convicted of or has pleaded guilty to committing a sexually oriented offense that is not a registration-exempt offense, and who is likely to engage in one or more sexually-oriented offenses in the future. R.C.2950.01(E). The trial court must consider the factors found in R.C.2950.09(B)(3) before adjudicating a person as a sexual predator:
 {¶ 98} "(3) In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 99} "(a) The offender's or delinquent child's age;
 {¶ 100} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses; *Page 35 
 {¶ 101} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 102} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 103} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 104} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 105} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 106} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; *Page 36 
 {¶ 107} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 108} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 109} The trial court must also determine by clear and convincing evidence that the defendant is a sexual predator. R.C. 2950.09(B)(4). Although a court must consider all the statutory factors, it has discretion to determine what weight, if any, will be assigned to each.State v. Cook (2001), 83 Ohio St.3d 404, 426, 700 N.E.2d 570. Only one or two factors may be sufficient to indicate that an offender is a sexual predator. State v. Wyant, 12th Dist. No. CA2003-08-029, 2004-Ohio-6663, ¶ 48. Some courts have held that a single criminal conviction may be sufficient to warrant classification as a sexual predator. State v. Purser, 153 Ohio App.3d 144, 2003-Ohio-3523;State v. Ward (1999), 130 Ohio App.3d 551, 720 N.E.2d 603.
 {¶ 110} Appellant's primary argument is that the state did not provide any expert testimony to prove that he was a sexual predator. Although expert testimony is often the most reliable indicator of whether a person is likely to commit future sexual offenses, it is not a required aspect of a sexual predator hearing. State v. Abelt (2001),144 Ohio App.3d 168, 173, 759 N.E.2d 847; State v. Sweeney, 5th Dist. No. 2005CA00300, 2006-Ohio-4874. Furthermore, there is no indication that Appellant's counsel asked for expert evaluation prior to the hearing. *Page 37 
 {¶ 111} The record of the hearing held on October 18, 2005, indicates that the trial court considered every factor listed in R.C.2950.09(B)(3). Both attorneys read through each factor in the statutory list and discussed its applicability to this case. The trial judge then discussed each factor. (10/18/05 Tr., pp. 17ff.) The court made special note that the crimes occurred over a long period of time, that Appellant was convicted of six counts of rape, that there was evidence at trial of further sexual crimes, that the child was very young, and that Appellant did not take responsibility for his actions. (10/18/05 Tr., p. 18.) The record sufficiently supports that the trial court considered the statutory factors and that there was a clear basis for the sexual predator classification, even without the presence of an expert evaluation.
 ASSIGNMENT OF ERROR NO. FIVE {¶ 112} "The trial court erred and violated the defendant's due process rights when it sentenced him to greater-than-minimum, maximum, and consecutive sentences."
 {¶ 113} Appellant raises an error under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. While this appeal was pending, the Ohio Supreme Court released Foster, which held that the felony sentencing provisions of the Revised Code required the court to make certain findings before imposing nonminimum (R.C. 2929.14(B)), maximum (R.C. 2929.14(C)), or consecutive sentences (R.C. 2929.14(E)(4)) are unconstitutional because they require judicial finding of facts not proven to a jury, thus violating the Sixth Amendment right to trial by jury. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one *Page 38 
and three of the syllabus. See Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; United States v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621; Cunningham v.California (2007), 549 U.S. _______, _______ S.Ct. _______, _______ L.Ed.2d _______.
 {¶ 114} The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right to a trial by jury. This includes the requirement that a jury, rather than the judge who is imposing the sentence, make all factual findings essential to impose punishment for the crimes that form the basis of the conviction. Foster at ¶ 3.
 {¶ 115} It is clear, and Appellee concedes, that the trial court relied on unconstitutional sentencing provisions to impose maximum and consecutive sentences on Appellant, and the sentence must be vacated and the case remanded for resentencing pursuant to Foster.
 {¶ 116} However, Appellant would like this Court to dictate some or all the terms of the new sentence, and in fact, asks that the trial court be ordered to impose the minimum possible sentence. UnderFoster, though, trial courts are now given wide discretion to impose felony sentences anywhere within the total possible range of allowable sentences. Appellant contends that exposing him to the full range of sentences will violate the ex post facto clause of Article I, Section 10, of the United States Constitution. In Beazell v. Ohio (1925),269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216, the United States Supreme Court explained the meaning of ex post facto *Page 39 
legislation: "It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." Id. at 169-170, 46 S.Ct. 68, 70 L.Ed. 216.
 {¶ 117} The state contends that any issues concerning due process or ex post facto considerations will not be ripe for review until the trial court actually resentences Appellant. At least four appellate districts have also come to this conclusion since Foster was released. State v.Davis, 4th Dist. No. 05CA50, 2006-Ohio-3549; State v. Rady, 11th Dist. No. 2006-L-012, 2006-Ohio-3434; State v. Lathan, 6th Dist. No. L-03-1188, 2006-Ohio-2490; State v. Sanchez, 3rd Dist. No. 4-05-47,2006-Ohio-2141. This Court has recently come to the same conclusion inState v. Kapsouris, 7th Dist. 06 MA 47, 2006-Ohio-7056. Issues are not typically ripe for review until they have been, "properly tested in a trial setting[.]" State v. Kole (2001), 92 Ohio St.3d 303, 308,750 N.E.2d 148. The trial court has not had an opportunity to resentence Appellant in light of the analysis and holding of Foster, and any appeal challenging the penalty imposed upon resentencing must wait until the trial court actually imposes the sentence.
 CONCLUSION {¶ 118} None of Appellant's assignments of error regarding his conviction have merit. Appellant argued that the state should not have been permitted to *Page 40 
present the testimony of M.F. or have been allowed to introduce a school record showing that Appellant had permission to take B.D. out of school. Both of these evidentiary issues arose due to questions posed during defense counsel's cross-examination, and thus, the state was not at fault in bringing the evidence into the trial. Appellant argued that the victim's younger brother should not have been permitted to testify, even though Evid.R. 601(A) allows children to testify. Appellant also argued that Dr. Mascio should not have been permitted to deviate from conclusions in his pretrial report. This deviation was addressed fully by counsel and the testimony and supporting evidence were submitted without objection. Appellant further believes the indictment was fatally flawed, even though Appellant's counsel agreed to the terms of the amended indictment. There is also sufficient evidence to support the trial court's sexual predator determination. The remaining assignments of error are largely repetitive. The only meritorious of error is assignment number five, which raises a Foster sentencing issue. Appellant's sentence is hereby vacated as required by Foster, and the case remanded for resentencing. All remaining aspects of the trial court's judgment are affirmed.
Vukovich, J., concurs.
 DeGenaro, P.J., concurs. *Page 1